# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2013-CA-01920-SCT

*PINNACLE TRUST COMPANY, L.L.C., EFP
ADVISORS, INC. AND DOUGLAS M. McDANIEL*

*v.*

*LISA BROCATO McTAGGART, INDIVIDUALLY,
AND AS NATURAL PARENT AND NEXT FRIEND
OF JONATHAN ANTONE McTAGGART, JACOB
ALEXANDER McTAGGART, AND MADALYN
ROSE McTAGGART, MINORS AND OLIVIA
JUSTINE McTAGGART*

| | |
|---|---|
| DATE OF JUDGMENT: | 10/10/2013 |
| TRIAL JUDGE: | HON. JANACE H. GOREE |
| TRIAL COURT ATTORNEYS: | WILLIAM FEATHERSTON |
| | STEPHEN WILLIAMS |
| COURT FROM WHICH APPEALED: | MADISON COUNTY CHANCERY COURT |
| ATTORNEYS FOR APPELLANTS: | KATHY A. SMITH |
| | JOHN G. CORLEW |
| | E. STEPHEN WILLIAMS |
| | JOHN ANDREW PAYNE |
| ATTORNEY FOR APPELLEES: | WILLIAM P. FEATHERSTON, JR. |
| NATURE OF THE CASE: | CIVIL - OTHER |
| DISPOSITION: | AFFIRMED AND REMANDED - 12/04/2014 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE RANDOLPH, P.J., KING AND COLEMAN, JJ.**

**RANDOLPH, PRESIDING JUSTICE, FOR THE COURT:**

¶1.     The McTaggarts filed suit against the former trustee and trust advisor of their family

trust, alleging improper handling of their trust funds. The former trustee and trust advisor

moved to dismiss the case or have the case stayed pending arbitration, based on an arbitration provision in a wealth-management agreement between the former trustee and trust advisor. The trial court found that, because the McTaggarts did not sign the agreement containing the arbitration provision and because the agreement specifically excluded nonsignatories, including third-party beneficiaries, the arbitration provision was not binding on the McTaggarts. The former trustee and trust advisor appealed. Finding no error, we affirm.

## **FACTUAL/PROCEDURAL BACKGROUND**

¶2.    On December 20, 2000, Billie B. Brocato executed her Last Will and Testament. Pursuant to her will, Brocato left all of her personal belongings to her daughter, Lisa Brocato McTaggart, with the exception of "cash, stocks, bonds, or like investments on hand or on deposit," business-related property, and $10,000, which was left to a friend. Brocato established a trust for the residue and remainder of her property and estate–the Billie B. Brocato Family Trust ("Trust"). Trusts were set up for Lisa and for each of Lisa's children (Jonathon, Jacob, Madalyn, and Olivia[1]). The will named The Capital Trust Company of Delaware as the Trustee and EFP, Inc., ("EFP")[2] as the Trust Advisor.

¶3.    Billie B. Brocato died on June 27, 2004, and a Petition for Probate was filed on July 15, 2004. The estate was closed on August 5, 2005.

---

[1] All of the children are currently minors except for Olivia.

[2] EFP Advisors, Inc., is named in the style of the case but has been referred to in the record as EFP, Inc.; Executive Financial Planning, Inc.; EFP; and EFP Wealth Management. This Court will refer to it as "EFP" throughout this opinion.

2

¶4. The Capital Trust Company of Delaware never assumed duties as Trustee of the Trust. On June 10, 2005, Lisa and "EFP," the trust advisor, requested that The Capital Trust Company of Delaware resign and appointed Pinnacle Trust Company ("Pinnacle") as the successor Trustee. Pinnacle accepted the trusteeship.

¶5. On June 13, 2005, Pinnacle Trust Company FBO[3] Billie B. Bracato Family Trust and "EFP," through its president Douglas M. McDaniel, entered into a Wealth-Management Agreement ("WMA"), in order for "EFP" to provide additional asset-management services for the Trust. Two sections are pertinent to today's dispute. Sections 16 and 24 of the WMA read as follows:

> **16. MEDIATION; BINDING ARBITRATION.** The parties shall first try in good faith to settle by mediation any dispute arising out of or relating to this Agreement. The mediation is to be administered by the American Arbitration Association. Excepting only claims for injunctive relief and, if desired by Client [Pinnacle Trust Company FBO Billie B. Brocato Family Trust], claims arising under the Investment Advisors Act of 1940, all controversies and claims arising under or relating to this Agreement not settled through mediation, are to be resolved by arbitration in accordance with the Commercial Arbitration Rules of the American Arbitration Association before a single arbitrator selected in accordance with those rules. The arbitration is to be conducted in a mutually agreed upon location. Each party shall submit to any court of competent jurisdiction for purposes of enforcement of any award, order or judgment. Any award, order or judgment pursuant to the arbitration is final and may be entered and enforced in any court of competent jurisdiction.

> **24. THIRD PARTY BENEFICIARIES.** This Agreement does not and is not intended to confer any rights or remedies upon any person or entity other than the signatories.

---

[3] FBO is an acronym which stands for "for the benefit of."

¶6.    On June 28, 2013, the McTaggarts filed suit in the Madison County Chancery Court against Pinnacle, "EFP," and McDaniel, alleging breach of fiduciary duties by "failing to prudently manage and invest the trust assets during the years 2007 through 2011," in violation of Mississippi Code Section 91-13-3, *inter alia*. The McTaggarts claimed that Pinnacle, "EFP," and McDaniel were "directly and proximately responsible for the loss of in excess of One Million Five Hundred Thousand Dollars and no/100 ($1,500,000.00)."

¶7.    On July 29, 2013, "EFP" and McDaniel filed a motion to dismiss or stay litigation pending arbitration, arguing that (1) the McTaggarts' complaint arose from an alleged dispute concerning the administration of the Trust, (2) the Trust was administered pursuant to the WMA, and (3) all claims arising under or relating to the WMA must be resolved by arbitration.  Pinnacle joined in this motion on July 30, 2013.

¶8.    At the August 30, 2013, hearing, "EFP" and McDaniel argued that the McTaggarts' claims were subject to the arbitration provision in the WMA, because the McTaggarts were direct beneficiaries of the Trust and the WMA was entered into for their direct benefit; therefore, the McTaggarts were direct beneficiaries of the separate WMA. "EFP" and McDaniel contended that, although the McTaggarts did not sign the WMA, the WMA was entered into by Pinnacle, as Trustee for the benefit of the Trust, i.e., for the benefit of the McTaggarts. "EFP" and McDaniel argued that, because Lisa signed a separate document appointing Pinnacle as Trustee and Pinnacle was given authority to handle the Trust funds for the benefit of the beneficiaries, Lisa was bound by the WMA entered into by Pinnacle for the benefit of the Trust. Additionally, "EFP" and McDaniel argued that the McTaggarts'

4

claims for the alleged failure of Pinnacle, "EFP," and McDaniel to prudently invest and manage their Trust assets between 2007 and 2011 arose directly from the WMA, which contained the arbitration clause, as the WMA concerned the management of the Trust. "EFP" and McDaniel requested that the chancery court compel arbitration of the McTaggarts' claims.

¶9. The McTaggarts argued in response that Mrs. Brocato never entered into any agreement binding her or her beneficiaries to arbitration. Additionally, Lisa never entered into any agreement with Pinnacle, "EFP," or McDaniel which would bind her or her children to arbitration. Because no entity which was a party to the WMA had claimed any allegations against any other party to the WMA, the arbitration clause was not at issue.

¶10. On October 3, 2013, the chancery court judge conducted a telephonic conference wherein she denied "EFP's" and McDaniel's motion to compel arbitration. The chancellor determined that the WMA did not confer any rights or remedies upon any persons who were not signatories of the WMA. The judge held that, because the McTaggarts did not sign the WMA, the arbitration clause was not binding on them. The court's order denying the motion to compel was entered on October 10, 2013, and "EFP," McDaniel, and Pinnacle timely filed their appeal.

## STATEMENT OF THE ISSUES

¶11. Pinnacle, "EFP," and McDaniel present the issue as follows:

> Whether an arbitration provision in a wealth management agreement by and between a trustee for the exclusive benefit of the trust and a trust advisor designated under the trust is binding on the beneficiaries of the trust when the

5

beneficiaries, though not signatories to the agreement, are direct beneficiaries of the agreement and when their claims against the trust advisor may only be determined by reference to the agreement because the claims touch matters covered by the agreement and the agreement serves as the only source from which the trust advisor's potential liability could flow.

The McTaggarts present the issue as follows:

Whether [the McTaggarts] who are beneficiaries of a testamentary trust established by Plaintiff, Lisa Brocato McTaggart's mother, Billie B. Brocato, deceased, are bound by an arbitration clause in a wealth management agreement executed by and between Appellants Pinnacle Trust Company, LLC, ["EFP"], and Douglas M. McDaniel when neither Billie B. Brocato was a party to the wealth management agreement nor were any of the Plaintiffs.

## STANDARD OF REVIEW

¶12.    This Court reviews the denial of a motion to compel arbitration *de novo*. ***Cmty. Bank of Miss. v. Stuckey***, 52 So. 3d 1179, 1181 (Miss. 2010) (citing ***United Credit Corp. v. Hubbard***, 905 So. 2d 1176, 1177 (Miss. 2004)). The scope of such review is limited, and this Court will not review the merits of the underlying claim. ***Harrison Cnty. Commercial Lot, LLC v. H. Gordon Myrick, Inc.***, 107 So. 3d 943, 949 (Miss. 2013) (citing ***Smith Barney, Inc. v. Henry***, 775 So. 2d 722, 725 (Miss. 2001)).

## ANALYSIS

¶13.    Under the Federal Arbitration Act, this Court conducts a two-pronged arbitration inquiry: "first, whether the parties intended to arbitrate the dispute, and second, if they did intend to arbitrate, 'whether legal constraints external to the parties' agreement foreclosed the arbitration of those claims.'" ***Scruggs v. Wyatt***, 60 So. 3d 758, 766 (Miss. 2011) (citations omitted). "The first prong is two-fold in that the court considers whether there is a valid

6

arbitration agreement and then whether the parties' dispute is within the scope of the arbitration agreement." *Id.* (citations omitted). To determine whether the parties' dispute is within the scope of the arbitration agreement, "two questions must be answered: (1) whether the proper forum for determining the scope of the arbitration agreement is in court or in arbitration, and (2) whether the arbitration agreement encompasses the dispute." *Greater Canton Ford Mercury, Inc. v. Ables*, 948 So. 2d 417, 421 (Miss. 2007) (citing *East Ford, Inc. v. Taylor*, 826 So. 2d 709, 713 (Miss. 2002)). "Under the second prong, '[t]he FAA mandates that arbitration agreements shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.'" *Scruggs*, 60 So. 3d at 766-67 (citations omitted).

¶14.    This Court has "acknowledged that there is a strong federal policy favoring arbitration." *Adams v. Greenpoint Credit, LLC*, 943 So. 2d 703, 708 (Miss. 2006) (quoting *Pre-Paid Legal Services v. Battle*, 873 So. 2d 79, 84 (Miss. 2004) (citations omitted)). However, a party will not be required to submit to arbitration "any dispute which he has not agreed so to submit." *Adams*, 943 So. 2d at 708 (quoting *Battle*, 873 So. 2d at 83 (quoting *AT&T Tech., Inc. v. Commc'n Workers of Am.*, 475 U.S. 643, 648, 106 S. Ct. 1415, 1418, 89 L. Ed.  2d 648 (1986))).

> Since arbitration provisions are "contractual in nature, the general rule is that 'a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit.'" *Qualcomm [Inc. v. Am. Wireless License Group]*, 980 So. 2d [261,] 269 [Miss. 2007] (quoting *Adams v. Greenpoint Credit, LLC*, 943 So. 2d 703, 708 (Miss. 2006)). *See also* *Bridas S.A.P.I.C. v. Gov't of Turkmenistan*, 345 F.3d 347, 354 n.3 (5th Cir. 2003) (quoting *Westmoreland v. Sadoux*, 299 F.3d 462, 465 (5th Cir. 2002)) (arbitration

7

agreements apply to nonsignatories only "in *rare circumstances*.") (emphasis added). However, "a non-signatory party may be bound to an arbitration agreement if so dictated by the ordinary principles of contract and agency." *Miss. Care Ctr. of Greenville, LLC v. Hinyub*, 975 So. 2d 211, 216 (Miss. 2008) (quoting *Washington Mut. Fin. Group, LLC v. Bailey*, 364 F.3d 260, 266 (5th Cir. 2004)). For example, "a signatory may enforce an arbitration agreement against a non-signatory if the non-signatory is a third-party beneficiary. . . ." *Qualcomm*, 980 So. 2d at 269 (citing *Adams*, 943 So. 2d at 708).

*Scruggs*, 60 So. 3d at 767.

¶15.    We must determine if this case presents one of those "rare circumstances" where nonsignatories should be bound by an arbitration agreement. More specifically, we must determine if a direct beneficiary of a Trust automatically becomes a direct beneficiary of an agreement entered into for its benefit but to which it is not a party, or whether it is simply a third-party beneficiary.

¶16.    Under the Trust, the Trustee (Pinnacle) had the authority to employ "accountants, attorneys, investment advisors, money managers, and such agents. . . ." As "EFP" was designated as the Trust Advisor in the Trust, Pinnacle hired "EFP" as an investment advisor and trust-fund manager and executed the WMA for the benefit of the Trust.

¶17.    The arbitration clause at issue is found in the WMA which was "entered into by and between ["EFP"] and **Pinnacle Trust Company FBO Billie B. Brocato Family Trust** (Client), residing in the state of **Mississippi**." (Emphasis original.) The purpose of the WMA was for the client to open an account with "EFP" and for "EFP" to provide asset-management services. This WMA provided "EFP" with the authority to direct and manage specified assets of the client in accordance with certain terms and conditions. The WMA provided that "EFP"

8

would analyze the client's financial goals in order for "EFP" to design a specific portfolio to fit the Client's investment needs. This WMA was signed on June 13, 2005, by the Senior Vice President of Pinnacle Trust under the header "**Pinnacle Trust Company FBO Billie Brocato Family Trust**" and by Douglas M. McDaniel, President of "EFP." (Emphasis original.) Per the specific exclusion in the WMA, no rights or remedies contained in the WMA were conferred on third-party beneficiaries.

¶18. The McTaggarts argue they are not bound by arbitration because they never signed the WMA. The McTaggarts also contend that their complaint is not based on a breach of the WMA but that Pinnacle, "EFP," and McDaniel breached a duty imposed by statute, Section 91-13-3. However, Pinnacle, "EFP," and McDaniel argue that the McTaggarts are direct beneficiaries of the WMA because they are direct beneficiaries of the Trust. Pinnacle, "EFP," and McDaniel base their argument on the relationships created in the Trust and WMA, but they fail to cite any case as authority that states direct beneficiaries of a Trust are direct beneficiaries of a subsequent agreement between the Trustee and Trust Advisor, as opposed to third-party beneficiaries.

> "Direct-benefit estoppel involve[s] non-signatories who, during the life of the contract, have embraced the contract despite their non-signatory status, but then, during litigation, attempt to repudiate the arbitration clause in the contract." *Noble Drilling Servs., Inc. v. Certex USA, Inc.*, 620 F.3d 469, 473 (5th Cir. 2010) (quoting *Hellenic Inv. Fund, Inc. v. Det Norske Veritas*, 464 F.3d 514, 517-18 (5th Cir. 2006)). *See also Simmons Hous., Inc. v. Shelton*, 36 So. 3d 1283, 1287-88 (Miss. 2010) ("estoppel prevents a party from embracing the benefits of a contract while simultaneously trying to avoid its burdens. . . ."); *Bailey*, 364 F.3d at 268 (quoting *Grigson v. Creative Artists Agency, LLC*, 210 F.3d 524, 528 (5th Cir. 2000)) (thus, "estoppel prevents a party from 'having it both ways.'"). According to *Noble Drilling*, "[a]

non-signatory can 'embrace' a contract containing an arbitration clause in two ways: (1) by knowingly seeking and obtaining 'direct benefits' from that contract; or (2) by seeking to enforce the terms of that contract or asserting claims that must be determined by reference to that contract." *Noble Drilling*, 620 F.3d at 473 (citing *Hellenic*, 464 F.3d at 517-20).

*Scruggs*, 60 So. 3d at 767-68. The McTaggarts argue they did not embrace the WMA because they never knew of its existence. Further, their claims would survive even if the WMA was not in place. Therefore, the McTaggarts contend that they are not direct beneficiaries of the WMA and the theory of estoppel is not applicable.

¶19. Pursuant to the Trust, Lisa and "EFP" appointed Pinnacle as successor trustee. Lisa's involvement with the Trust, other than as a beneficiary, ended there. The Trust, created in Article V of Brocato's will, gave sole authority and discretion to the Trustee regarding disbursements of principal and income – ". . . all income and/or trust principal disbursements herein are to be made solely in the discretion of the Trustee."

¶20. This Court has addressed the issue of whether nonsignatories can be bound by an arbitration agreement. *See Simmons Hous., Inc. v. Shelton*, 36 So. 3d 1283, 1287 (Miss. 2010) (children were not referenced or alluded to in the contract and thus were not third-party beneficiaries to the agreements signed by their parents, nor did the principles of equitable estoppel apply); *Adams v. Greenpoint Credit, LLC*, 943 So. 2d 703, 709 (Miss. 2006) (daughter was a "stranger to the contract" and not bound by arbitration clause found in the contract signed by her father); *Terminix Int'l, Inc. v. Rice*, 904 So. 2d 1051, 1058 (Miss. 2004) (wife was bound by the arbitration clause in the contract signed by her husband based on the doctrine of equitable estoppel); *Smith Barney, Inc. v. Henry*, 775 So. 2d 722,

727 (Miss. 2001) (as successor under the terms of a will, Henry, an adult, was bound by the arbitration agreements signed by the decedent). Neither the decedent/testator nor the beneficiaries, direct or residual, were aware of or signed the WMA or any other document which would bind them to arbitrate this issue.

¶21.    Pinnacle, "EFP," and McDaniel rely soley on *Scruggs*, which is distinguishable. In *Scruggs*, this Court determined that Wyatt's claims clearly "touched matters covered by" the joint venture in question. *Id.* at 769.

> The foundation of Wyatt's lawsuit is premised upon a dispute with Nutt & McAlister over his compensation (fee share) *directly tied to successful recovery by the Katrina Joint Venture* against its client's insurers. As such, Wyatt's claims against the Scruggs Defendants are directly dependent on the Katrina JVA, and require reference thereto.

*Id* at 770 (emphasis added). Unlike Wyatt, the McTaggarts' claims are not "directly dependent on the [WMA]."  The McTaggarts filed suit, not claiming breach of the WMA, but alleging a breach of fiduciary duty imposed by Mississippi Code Section 91-13-3, which requires fiduciaries to invest funds prudently.

¶22.    In the present case, Brocato never signed any agreements with arbitration clauses included, such that her successors would be bound. The only pertinent clauses at issue in this matter are found in a separate agreement entered into by Pinnacle and "EFP" and unknown to the beneficiaries of the Trust.

¶23.    The McTaggarts are, in fact, direct and residual beneficiaries of the Trust, but, nonetheless, that does not make them anything other than third-party beneficiaries of the WMA, as they were not parties to it. The McTaggarts are "strangers to the contract," for they

11

never knew of its existence and are not attempting to enforce any provision of the WMA. Third-party beneficiaries were explicitly excluded as being bound by the WMA. As such, this matter does not present one of those "rare circumstances" where this Court will bind nonsignatories to arbitration.

## CONCLUSION

¶24. The only mention of beneficiaries in the five-page WMA is a clause that explicitly excludes third-party beneficiaries. Pinnacle, "EFP," and McDaniel have failed to establish that the McTaggarts were parties to the WMA, let alone that they even knew the WMA existed. The record is clear that neither Mrs. Brocato nor Lisa signed the WMA containing the arbitration clause. The McTaggarts neither sought to enforce the terms of the WMA, as they were not parties to the WMA, nor are their claims dependent upon its existence. Therefore, we affirm the judgment of the chancery court that the McTaggarts are not bound by the arbitration clause in the WMA and remand this case to the trial court for proceedings consistent with this opinion.

¶25. **AFFIRMED AND REMANDED**.

**WALLER, C.J., LAMAR, KITCHENS, CHANDLER, PIERCE, KING AND COLEMAN, JJ., CONCUR. DICKINSON, P.J., CONCURS IN RESULT ONLY WITHOUT SEPARATE WRITTEN OPINION**.