**Thomas JONES, etc.; et al, Plaintiffs**

**v.**

**SINGING RIVER HEALTH SERVICES FOUNDATION, et al Defendants**

---

Martha Ezell Lowe, individually and on behalf of a class of similarly situated employees, Plaintiff-Appellee

v.

KPMG, L.L.P., Defendant-Appellant

No. 16-60263

United States Court of Appeals, Fifth Circuit.

Filed January 5, 2017

Richard Paul Rouco, Quinn, Connor, Weaver, Davies & Roucco, Birmingham, AL, Roger K. Doolittle, Jackson, MS, Joe R. Whatley, Jr., Whatley Kallas, L.L.C., Birmingham, AL, for Plaintiff-Appellee

Amelia Toy Rudolph, Patricia A. Gorham, Sutherland Asbill & Brennan, L.L.P., Atlanta, GA, Robert David Kaufman, Brunini, Grantham, Grower & Hewes, P.L.L.C., Jackson, MS, Taylor B. McNeel, Brunini, Grantham, Grower & Hewes,

P.L.L.C., Biloxi, MS, for Defendant-Appellant

Before JONES, BARKSDALE, and COSTA, Circuit Judges.

EDITH H. JONES, Circuit Judge: *

This appeal arises out of the litigation surrounding shortfalls in the Singing River Health System (SRHS) pension plan (the Plan) and KPMG's role as auditor of that plan. On appeal, KPMG asserts that the gateway issue of arbitrability must itself be submitted to an arbitrator and the district court erred in failing to compel the Lowe class to arbitrate its claims. Because KPMG waived the first issue and fails to show how Lowe must necessarily rely on the contract to which she wasn't a party in order to make her case, we **AFFIRM**.

## BACKGROUND

KPMG audited the annual financial statements of SRHS from fiscal years 2008 through 2012 and of the Plan sponsored by SRHS from fiscal years 2008 through 2011. Lowe is a former employee of SRHS and was a vested participant in the Plan. KPMG performed its work for SRHS and the Plan pursuant to Engagement Letters which required that disputes or claims arising out of or relating to the contract must be submitted to arbitration. These letters also defined the scope of KPMG's audits and KPMG's role as auditor. The Plan allegedly became underfunded, precipitating a host of litigation.

Lowe filed a class action against KPMG, SRHS, the Plan trustees, and others in February 2015, alleging that KPMG was aware of or recklessly disregarded the underfunding and was therefore complicit in the breaches of fiduciary duty by the Plan's trustees. Lowe's suit against KPMG was consolidated procedurally with two other class actions, the Jones and Cobb cases, all of which arose out of the alleged underfunding of the Plan. KPMG moved to compel arbitration in the Jones and Lowe actions. After reviewing allegations in both suits, the district court granted the motion in Jones but denied it in the Lowe action.[1]

Neither Jones nor Lowe was a party to the contracts between SRHS or the Plan and KPMG. Both accused KPMG of wrongdoing in its role as auditor of the Plan. The district court held that the Jones class, whose pleading specifically invoked the Engagement Letters, must submit to arbitration under the doctrine of equitable estoppel. The district court observed that the factual allegations pled by the Jones plaintiffs relied upon the professional standards required by the Engagement Letters. Jones v. Singing River Health Servs. Found., No. 14–447, 2016 WL 1254385, at *3 (S.D. Miss. Mar. 29, 2016). The Lowe class, in contrast, pled solely common law claims and made no factual allegation invoking the Engagement Letters. KPMG argued that the Lowe claims actually relied on the Engagement Letters, because the letters defined the scope of KPMG's contractual role with SRHS and the Plan, and therefore equitable estoppel compels submission of Lowe's claims to arbitration. The district court disagreed.

This appeal presents the question whether the arbitration terms in KPMG's Engagement Letters can be enforced against the nonsignatory Lowe class by virtue of equitable estoppel. We do not

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

1. The Cobb plaintiffs did not sue KPMG, so there was no motion to compel arbitration filed in that case.

consider whether the Plan was actually underfunded or the merits of the underlying fiduciary duty breach claims. "[F]ederal courts have held that so long as there is *some* written agreement to arbitrate, a third party may be bound to submit to arbitration." *Bridas S.A.P.I.C. v. Gov't of Turkmenistan*, 345 F.3d 347, 356 (5th Cir. 2003). Under Mississippi common law, which governs this case, "[o]rdinary principles of contract and agency law may be called upon to bind a nonsignatory." *Id.* KPMG appeals the denial of its motion to compel arbitration of the *Lowe* action on two primary grounds: (1) gateway questions, such as the scope and enforceability of the arbitration requirements, should be referred to an arbitrator for determination, and (2) the *Lowe* plaintiffs are bound by the doctrine of equitable estoppel to the arbitration clause in the Engagement Letters.

### 1. Gateway issues of arbitrability

■ KPMG contends that the question of arbitrability ought to be submitted to arbitrators pursuant to the broad language in the arbitration clause of the Engagement Letters. This argument fails. As the district court noted, "KPMG has voluntarily submitted this issue to this Court." *Jones*, 2016 WL 1254385, at *2, n. 3. This appellate court does not resurrect for decision issues that were deliberately waived in the trial court.

### 2. Direct benefit estoppel

The abuse of discretion standard of review applies to determine whether the district court erred in its analysis and conclusion concerning the direct benefits equitable estoppel test. *Noble Drilling Servs., Inc. v. Certex USA, Inc.*, 620 F.3d 469, 472–73 (5th Cir. 2010). "To constitute an abuse of discretion, the district court's decision must be either premised on an application of the law that is erroneous, or

on an assessment of the evidence that is clearly erroneous." *Grigson v. Creative Artists Agency L.L.C.*, 210 F.3d 524, 528 (5th Cir. 2000).

Typically, a nonsignatory to an agreement to arbitrate is not bound by that agreement unless under "[o]rdinary principles of contract and agency law." *Bridas S.A.P.I.C.*, 345 F.3d at 356. Specifically, "[s]ix theories for binding a nonsignatory to an arbitration agreement have been recognized: (a) incorporation by reference; (b) assumption; (c) agency; (d) veil-piercing/alter ego; (e) estoppel; and (f) third-party beneficiary." *Id.* Direct-benefit estoppel is the only theory raised here by KPMG.

"Direct-benefit estoppel involve[s] nonsignatories who, during the life of the contract, have embraced the contract despite their non-signatory status but then, during litigation, attempt to repudiate the arbitration clause in the contract." *Hellenic Inv. Fund, Inc. v. Det Norske Veritas*, 464 F.3d 514, 517–18 (5th Cir. 2006) (internal quotation marks omitted). This court has further explained that "[a] non-signatory can 'embrace' a contract containing an arbitration clause in two ways: (1) by knowingly seeking and obtaining 'direct benefits' from that contract; or (2) by seeking to enforce the terms of that contract or asserting claims that must be determined by reference to that contract." *Noble Drilling*, 620 F.3d at 473.

■ The district court briefly addressed these alternatives, holding "[Lowe] does not ask the Court to enforce the terms of the engagement letters; nor does she assert any claims that would require reference to engagement letters." *Jones*, 2016 WL 1254385, at *4. The district court added that "Lowe does not even reference the engagement letters in her Complaint, and she has signed an affidavit stating that she had no knowledge of the engagement letters before she filed this lawsuit." *Id.* KPMG only meaningfully addresses the

second alternative identified by *Noble Drilling* and contends that Lowe is asserting claims that must be determined "by reference to" the Engagement Letters between SRHS and the Plan.

The law governing this alternative has been well articulated by this court. In *Noble Drilling*, this court held that if a non-signatory party seeks to assert claims that must be determined "by reference to" the contract containing the arbitration term, then equitable estoppel would compel arbitration. *Noble*, 620 F.3d at 473. Three later Mississippi Supreme Court cases have supplemented this understanding by explaining that if a nonsignatory party's claim is "directly dependent" on the contract that calls for arbitration, the nonsignatory must submit to that remedy. *See Hattiesburg Health & Rehab Ctr., LLC v. Brown*, 176 So.3d 17, 24 (Miss. 2015), reh'g denied (Oct. 22, 2015) (denying equitable estoppel because "[n]or is his estate suing to enforce the terms of the admission agreement, because his claims are not 'directly dependent' on the agreement."); *Pinnacle Trust Co. v. McTaggart*, 152 So.3d 1123, 1129 (Miss. 2014) (denying equitable estoppel because "[u]nlike *Wyatt*, the McTaggarts' claims are not 'directly dependent on the [WMA].' "); *Scruggs v. Wyatt*, 60 So.3d 758, 771 (Miss. 2011) ("As such, Wyatt's claims against the Scruggs Defendants are directly dependent on the Katrina JVA").

As the party attempting to compel arbitration by a nonsignatory, KPMG must show that Lowe's claims necessarily rely on the Engagement Letters. KPMG argues that it is being sued in its role as auditor, its role as auditor is defined by the Engagement Letters, and therefore the common law claims by the *Lowe* class are directly dependent on the Engagement Letters. This is not, however, the standard that has been applied by either the Mississippi Supreme Court or this court.

In *Noble Drilling*, this court rejected the use of equitable estoppel to force a non-signatory into arbitration. *Noble Drilling*, 620 F.3d at 474. Despite claims that the "lawsuit is simply an 'effort to enforce' the Rope [sic] specifications that were included in the [Purchase Order Agreements]," this court held that because (1) the claims themselves need not be based on the Purchase Order Agreement and (2) Noble Drilling had disclaimed any reliance on the agreement, Noble Drilling could not be bound by the other parties' arbitration agreement. *Id.* Noble sued Certex and Bridon, the companies which negotiated the Purchase Order Agreement, after purchasing rope from Certex. Noble did not know about the Purchase Order Agreement, did not seek to enforce the agreement, and was suing on the basis of pre-purchase representations made by the parties rather than warranties in the agreement. *Id.* Likewise, in this case, Lowe did not know about the Engagement Letters, and has disclaimed any reliance on the Letters, and her claims rely on common law tort theories, not on the Letters. KPMG argues that Lowe's common law claims can only be determined "by reference to" the Engagement Letters, but it proffers little to support this argument.

KPMG does assert that the district court erred by failing to apply the analysis of *Scruggs v. Wyatt*. In *Scruggs*, a law firm associate claimed fees against another firm, but the associate's firm and the other firm had participated in a joint venture and had an arbitration agreement. *Scruggs*, 60 So.3d at 770. The Mississippi Supreme Court observed, "[t]he foundation of [the] lawsuit is premised upon a dispute with Nutt & McAlister over his compensation (fee share) directly tied to successful recovery by the Katrina Joint Venture against its client's insurers. As such, Wyatt's claims against the Scruggs Defen-

dants are directly dependent on the Katrina JVA." *Id.* Wyatt was working for one of the parties on the subject matter of the contract and seeking to be paid pursuant to the contract. There is no such direct dependence between the *Lowe* claims and the Engagement Letters in the present case.

Notably, the Mississippi Supreme Court further explained its equitable estoppel doctrine by distinguishing *Scruggs* from *Hattiesburg Health & Rehab Center*, a case in which the claims "sound in tort, and [plaintiff] could pursue those claims without an admission agreement at all." *Hattiesburg Health & Rehab Ctr., LLC*, 176 So.3d at 24; *see also Pinnacle Trust Co.*, 152 So.3d at 1129 ("The McTaggarts filed suit, not claiming breach of the [contract], but alleging a breach of fiduciary duty imposed by Mississippi Code Section 91–13–3"). The nature of these claims made *Scruggs* "easily distinguishable" from both *Hattiesburg* and *Pinnacle Trust. Id.*

Similarly, the present case is based on tort rather than contract law. While it might well be easier for Lowe to pursue her claims based on the Engagement Letters, the standard for showing "direct dependence" is what she pled, not what she might have pled. KPMG, as the movant for arbitration, had to demonstrate why Lowe's claims inevitably involve the terms of the Engagement Letters. KPMG failed this task both in brief and at oral argument. The best argument KPMG has been able to muster is a citation to a comment discussing one element of the tort of aiding and abetting a breach of fiduciary duty. Restatement (Second) of Torts § 867(b) cmt. D (aiding/abetting a breach of fiduciary duty requires that the tortfeasor "knows that the other's conduct constitutes a breach of duty and gives substantial assistance or encouragement to the other …"). Lowe's response is concise and on

point: the complaint alleges that KPMG "knowingly participated in the plan trustees' breach of fiduciary duty," but those trustees are neither coextensive with SRHS nor parties to an arbitration agreement with KPMG. Lowe's claims, in other words, exist separate and apart in tort law from the terms of the Engagement Letters.

Lowe has chosen to disclaim any reliance on the agreements containing the arbitration clause as a source of KPMG's obligations to the Plan. If that choice makes it harder for her to prove her case, so be it. If she later attempts to claim a remedy under the Engagement Letters, KPMG can seek relief including a renewed request for arbitration. What is clear is that based on Lowe's pleadings and the arguments proffered by KPMG, Lowe's claims are not directly dependent on the Engagement Letters. Therefore, the district court correctly denied the motion to compel arbitration.

For the foregoing reasons, we **AFFIRM** the order of the district court denying the motion to compel arbitration.