# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2018-CA-00723-SCT

*LAGB, LLC AND MAMA KIO'S GRILL, INC.*

*v.*

*TOTAL MERCHANT SERVICES, INC., HSBC
BANK USA, GLOBAL PAYMENTS, INC. AND
GLOBAL PAYMENTS DIRECT, INC.*

| | |
|---|---|
| DATE OF JUDGMENT: | 04/13/2018 |
| TRIAL JUDGE: | HON. WINSTON L. KIDD |
| TRIAL COURT ATTORNEYS: | WALTER H. BOONE |
| | CHARLES H. RUSSELL, III |
| | LAWRENCE M. COCO, III |
| | T. STEWART LEE, JR. |
| | COLLEEN SUZANNE WELCH |
| | JOHN T. ROUSE |
| | JAMES E. GRAVES, III |
| | H. KEITH KEETON |
| COURT FROM WHICH APPEALED: | HINDS COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANTS: | JAMES L. KELLY |
| | H. KEITH KEETON |
| ATTORNEYS FOR APPELLEES: | CHARLES H. RUSSELL, III |
| | JAMES E. GRAVES, III |
| | JOHN T. ROUSE |
| | WALTER H. BOONE |
| NATURE OF THE CASE: | CIVIL - CONTRACT |
| DISPOSITION: | AFFIRMED IN PART; REVERSED AND REMANDED IN PART - 09/26/2019 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE RANDOLPH, C.J., ISHEE AND GRIFFIS, JJ.**

**RANDOLPH, CHIEF JUSTICE, FOR THE COURT:**

¶1.    LAGB, LLC, a commercial landlord, sued its tenant Mama Kio's Grill and numerous companies that provided credit-card processing services to Mama Kio's, alleging that the negligence of the credit-card processing companies caused Mama Kio's to breach its lease with LAGB. Mama Kio's filed a cross-claim against the credit-card processing companies, alleging misrepresentations and tortious interference with its business. The credit-card processing companies filed motions compelling LAGB and Mama Kio's to arbitrate. The trial court granted the motions. While the trial court did not err by compelling Mama Kio's to arbitrate its cross-claims, it did err by compelling LAGB to arbitrate its claims.

## FACTS AND PROCEDURAL HISTORY

¶2.    In January 2013, LAGB was formed "for the sole purpose of acquiring and owning the 10,000 square foot building . . . renovating and improving the said building for the purpose of housing a Mexican restaurant, and then leasing the improved building to Mama Kio's Grill, Inc." Once the building was acquired, LAGB and Mama Kio's entered into a commercial lease.

¶3.    Federico Garcia, president of Mama Kio's, entered into an agreement with Total Merchant Services (TMS) for credit-card financial services for the restaurant. Two months after opening Mama Kio's, Garcia noticed that the bank deposits through TMS were considerably less than expected. TMS later discovered the cause was an improper code in its software that had failed to collect the tips authorized by the customers. The missing tips totaled approximately $14,000. TMS attempted to remedy the error by running the credit cards again for the uncharged tip amounts. However, the customers were charged not only

2

for the uncollected tips but also for the entire charged amounts. More than three thousand customers' transactions were double and/or triple billed, resulting in more than $400,000 taken from Mama Kio's customers' accounts. Mama Kio's worked with the credit-card companies for more than a month to repair and mitigate the damages. Mama Kio's was forced to close its restaurant for lack of customers.

¶4.     LAGB filed suit against Mama Kio's for breach of its lease contract and sought damages for rent, insurance, taxes, and capital improvements. LAGB also filed suit against the credit-card processing companies, pleading in the alternative three theories of wrongdoing: negligence, tortious interference with a contract, and tortious interference with a prospective business advantage.  In its answer to the complaint, Mama Kio's filed cross-claims against the credit-card processing companies, alleging causes of action for breach of fiduciary relationship, intentional and/or gross negligent misrepresentation, and tortious interference with a prospective business advantage.

¶5.     The credit-card processing companies filed motions to compel arbitration of LAGB's claims against them and Mama Kio's cross-claims. The companies also filed motions to stay, alleging that all claims arose from contractual breaches of the agreement between the companies and Mama Kio's and that the agreement contained an arbitration clause. The companies alternatively moved to dismiss the complaint, because LAGB lacked standing to bring an action against the companies and the companies owed no legal duty to LAGB.

¶6.     LAGB argued that it never contracted with the companies, that it was not a third-party beneficiary of the contract, and that it could not be bound by an arbitration clause in a

3

contract between two other parties. Mama Kio's argued that its claims did not arise out of the Merchant Agreement signed by a representative of Mama Kio's and that Mama Kio's was not aware of and had never signed any other agreement that contained an arbitration clause.

¶7. The trial court granted the companies' motions to compel arbitration. LAGB and Mama Kio's separately moved to alter or amend the judgment and filed a motion for the trial court to enter specific findings of fact and conclusions of law. After a hearing was conducted on the motions, the trial court denied their motions. Subsequently, Mama Kio's and LAGB appealed.

## ISSUES

¶8. For brevity and clarity, the issues have been reordered and restated as follows:

    I.      Is there a valid arbitration agreement?

    II.     Does the dispute fall within the scope of the agreement?

    III.    Whether any legal constraints external to the agreement would prevent arbitration.

    IV.    Is LAGB bound by the arbitration clause contained in the contract entered into by Mama Kio's and the credit-card processing companies?

## STANDARD OF REVIEW

¶9. The standard of review for arbitration disputes is well settled.

> This Court reviews the grant of a motion to compel arbitration de novo. *Tupelo Auto Sales, Ltd. v. Scott*, 844 So. 2d 1167, 1169 (Miss. 2003) (citing *East Ford, Inc. v. Taylor*, 826 So. 2d 709, 713 (Miss. 2002)). Under Mississippi's two-prong test to determine arbitrability, this Court asks: (1) whether the parties have agreed to arbitrate the dispute, and (2) whether legal constraints external to the agreement prevent arbitration. *Smith ex rel. Smith v. Captain D's, LLC*, 963 So. 2d 1116, 1119-20 (Miss. 2007) (quoting

4

*Rogers–Dabbs Chevrolet–Hummer v. Blakeney*, 950 So. 2d 170, 173 (Miss. 2007)).

*Doe v. Hallmark Partners, LP*, 227 So. 3d 1052, 1055 (Miss. 2017). Under the first prong, this Court asks: "(1) Is there a valid arbitration agreement? And, if so, (2) does the dispute fall within the scope of the agreement?" *Id.* (quoting *Smith*, 963 So. 2d at 1120). "To determine whether there is a valid arbitration agreement, we apply the law of contracts." *Adams Cmty. Care Ctr., LLC v. Reed*, 37 So. 3d 1155, 1158 (Miss. 2010) (citing *Grenada Living Ctr., LLC v. Coleman*, 961 So. 2d 33, 36-37 (Miss. 2007). The elements of a contract are "(1) two or more contracting parties, (2) consideration, (3) an agreement that is sufficiently definite, (4) parties with legal capacity to make a contract, (5) mutual assent, and (6) no legal prohibition precluding contract formation." *Id.* (internal quotation marks omitted) (quoting *Coleman*, 961 So. 2d at 37). Applicable contract defenses provided under the second prong include fraud, duress, and unconscionability. *E. Ford, Inc. v. Taylor*, 826 So. 2d 709, 713 (Miss. 2002) (citing *Doctor's Assocs., Inc. v. Casarotto*, 517 U.S. 681, 686, 116 S. Ct. 1652, 134 L. Ed. 2d 902 (1996)).

## ANALYSIS

### I.      Is there a valid arbitration agreement?

¶10.    Mama Kio's and TMS entered into a "Merchant Credit Card Processing Application and Agreement" (Merchant Application). The following language was contained in the Merchant Application in the first of three paragraphs directly above the signature line:

> By signing below you are agreeing to the provisions stated within this merchant application, and have acknowledged receipt and have read the Merchant Credit Card Processing Agreement (the "Merchant Agreement").

These provisions must be read before signing. By signing below you agree to the terms and conditions contained in the merchant application and the Merchant Agreement.

The last sentence of that paragraph reads, "A complete copy of your Merchant Agreement can be obtained at the following URL: http://www.merchantsupport.info/disclosure/TMS.html." The font size of the URL was slightly smaller than the preceding text.

¶11. The second paragraph reads as follows:

IN ORDER TO DISPUTE ANY CHARGE OR FUNDING, MERCHANT MUST NOTIFY SERVICERS IN WRITING WITHIN THIRTY DAYS OF THE DATE OF THIS STATEMENT WHERE SUCH CHARGE OR FUNDING APPEARS OR SHOULD HAVE APPEARED. THE LIABILITY OF SERVICES IS LIMITED UNDER THE MERCHANT AGREEMENT. THE MERCHANT AGREEMENT CONTAINS MANDATORY PROCEDURES FOR RESOLVING DISPUTES. ARBITRATION IS REQUIRED IN ALL BUT CERTAIN LIMITED CIRCUMSTANCES, AND PURSUING CLAIMS ON A CLASS-WIDE BASIS IS PROHIBITED. Please review the Merchant Agreement for further details.

¶12. The Merchant Agreement, which was provided through accessing a website, was a thirteen-page document. Almost the entirety of page nine of the Merchant Agreement was devoted to arbitration.

1.50 Dispute Resolution.

Servicers and Merchant each acknowledge and agree that any controversy, disagreement, dispute or claim arising out of or relating to this Agreement, or any breach thereof (each, a "Dispute"), shall be settled by following the procedures set forth below:

. . . .

(c) IN THE ABSENCE OF RESOLVING THE DISPUTE UNDER THIS SECTION 1.50 AND INSTEAD OF SUING IN COURT, SERVICERS AND

MERCHANTS EACH AGREE TO SETTLE AND RESOLVE FULLY AND FINALLY ALL DISPUTES EXCLUSIVELY BY ARBITRATION, EXCEPT IN THE FOLLOWING LIMITED CIRCUMSTANCES: (I) SERVICERS OR MERCHANTS MAY COMMENCE AN INDIVIDUAL ACTION IN SMALL CLAIMS COURT WHERE THE AMOUNT OF THE DISPUTE DOES NOT EXCEED THE JURISDICTIONAL LIMIT OF SUCH COURT; AND (II) MERCHANT MAY FILE A DISPUTE WITH ANY FEDERAL, STATE OR LOCAL GOVERNMENTAL AGENCY THAT CAN, IF THE LAW SO AUTHORIZES, SEEK RELIEF AGAINST SERVICERS OR BEHALF OF MERCHANT. THE AGREEMENT TO HAVE DISPUTES RESOLVED BY ARBITRATION IS MADE WITH THE UNDERSTANDING THAT EACH PARTY IS IRREVOCABLY, KNOWINGLY, AND INTELLIGENTLY WAIVING AND RELEASING ITS RIGHT TO LITIGATE DISPUTES THROUGH A COURT AND TO HAVE A JUDGE OR JURY DECIDE DISPUTES. Without limitation, Servicers and Merchant agree that Disputes, as defined above, shall include the following matters: (a) any Dispute by any party against any agent, employee, successor, or assign of the other party or parties, including to the full extent permitted by applicable law, third parties who are not signatories to this Agreement, whether related to this Agreement or otherwise; (b) any past, present, or future Dispute; and (c) any Dispute as to the scope, validity, or applicability of this Section 1.50, and/or the arbitrability of any Dispute; and (d) any Dispute against Servicers, or any solicitation, or advertising, even if it arises after the Agreement has terminated.

The Merchant Agreement also included a choice-of-law provision.

1.30 Choice of Law, Jurisdiction, Venue.

The parties agree that all performances and transactions under this Agreement will be deemed to have occurred in Colorado, and that Merchant's entry into and performance of this Agreement will be deemed to be the transaction of business within the State of Colorado. The Agreement will be governed by Colorado law, without regard to its conflicts-of-law principles, and applicable federal law. Subject to Section 1.50 below: (i) the parties hereby knowingly, intelligently, and voluntarily consent to the exclusive jurisdiction and venue for any action relating to the subject matter of this Agreement in either the courts of the State of Colorado sitting in Eagle County, Colorado, or the United States District Court for the District of Colorado, sitting in Denver Colorado . . . .

¶13.    In ***Woodruff v. Thames***, this Court addressed contracts referencing and incorporating other documents.

> For an incorporation by reference to be effective, it must be clear that the parties to the agreement had knowledge of and assented to the incorporated terms. A reference to another document must be clear and unequivocal, and the terms of the incorporated document must be known or easily available to the parties. A document is considered incorporated by reference where the incorporating document specifically provides that it is subject to the incorporated one. However, a mere reference to another document is not sufficient to incorporate that other document into a contract; the writing to which reference is made must be described in such terms that its identity may be ascertained beyond reasonable doubt.

***Woodruff v. Thames***, 143 So. 3d 546, 554-55 (Miss. 2014) (quoting 17A C.J.S. *Contracts* § 402 (2011)). The Merchant Application specified that the relationship between the parties would be governed by the separate Merchant Agreement and that Mama Kio's would be bound by the terms of the Merchant Agreement. By signing the Merchant Application, Mama Kio's director and president, Federico Garcia, affirmed that he had reviewed and agreed to the full terms of the Merchant Agreement. *See **Terminix Int'l, Inc. v. Rice***, 904 So. 2d 1051, 1056 (Miss. 2004) ("[T]he law presumes that Dr. Rice read the agreement he signed with Terminix. Had he done so, he would have seen the arbitration clause in the contract.").

¶14.    The Merchant Application made clear that the Merchant Agreement must be read because it contained further terms of the parties' agreement and laid out wholly ascertainable and definite terms requiring arbitration of disputes. The Merchant Agreement, referenced by and incorporated in the Merchant Application, is valid and enforceable against Mama Kio's.

**II.     Does the dispute fall within the scope of the agreement?**

¶15. Mama Kio's three cross-claims alleged against the credit-card processing companies were (1) breach of fiduciary duty, (2) intentional and/or gross negligent misrepresentation, and (3) tortious interference with prospective business advantage. These claims arose out of the credit-card processing companies' alleged breach of the Merchant Agreement. Section 1.50 of the Merchant Agreement reads that "any controversy, disagreement, dispute or claim arising out of or relating to this Agreement, or any breach thereof (each, a 'Dispute'), shall be settled by [dispute resolution and then arbitration]."

¶16. Mama Kio's cross-claims were the precise types of disputes anticipated and provided by the Merchant Agreement.

### III. Whether any legal constraints external to the agreement would prevent arbitration.

¶17. Mama Kio's argues that the Merchant Agreement is both procedurally and substantively unconscionable, thus preventing arbitration. The party opposing arbitration bears the burden of proving that a contract defense applies in the particular case. *Norwest Fin. Miss., Inc. v. McDonald*, 905 So. 2d 1187, 1193 (Miss. 2005) (citing *Green Tree Fin. Corp.–Ala. v. Randolph*, 531 U.S. 79, 92, 121 S. Ct. 513, 522, 148 L. Ed. 2d 373 (2000)). The doctrine of unconscionability applies only to the most egregious of contractual situations. *Smith v. Express Check Advance of Miss., LLC*, 153 So. 3d 601, 607 (Miss. 2014). An unconscionable contract is "one such as no man in his senses and not under a delusion would make on the one hand, and as no honest and fair man would accept on the other . . . ." *Id.* (internal quotation marks omitted) (quoting *Terre Haute Cooperage v. Branscome*, 203 Miss. 493, 35 So. 2d 537, 541 (1948)). An unconscionable contract

"affronts the sense of decency." *Id.* (internal quotation marks omitted) (quoting ***Covenant Health & Rehab., LP v. Estate of Moulds***, 14 So. 3d 695, 699 (Miss. 2009)). Procedural unconscionability is established by showing "a lack of knowledge, lack of voluntariness, inconspicuous print, the use of complex legalistic language, disparity in sophistication or bargaining power of the parties and/or a lack of opportunity to study the contract and inquire about the contract terms." ***Taylor***, 826 So. 2d at 714 (internal quotation marks omitted) (quoting ***Pridgen v. Green Tree Fin. Servicing Corp.***, 88 F. Supp. 2d 655, 657 (S.D. Miss. 2000)). "The terms of a substantively unconscionable contract are so unreasonably favorable to one party that the contract imposes oppressive terms on the weaker party." ***Smith***, 153 So. 3d at 607-08 (citing ***Moulds***, 14 So. 3d at 699).

¶18.     The arbitration agreement entered into by Mama Kio's and the credit-card processing companies is not unconscionable. Considering the merits of Mama Kio's claims of procedural unconscionability, Mama Kio's could have done business with numerous other credit-card processing companies. Mama Kio's was not coerced to do business with these companies. After Mama Kio's was presented with the Merchant Application, Garcia, on behalf of Mama Kio's, could have refused to sign it, or he could have contracted with other credit-card processing companies. The arbitration agreement in the Merchant Application is in all capital letters directly above the signature line. The page devoted to the arbitration agreement in the Merchant Agreement also contained language in all capital letters regarding resolving disputes through arbitration and waiving a right to a jury trial. In Mississippi, a person is charged with knowing the contents of any document that he executes. ***J.R. Watkins***

10

***Co. v. Runnels***, 252 Miss. 87, 172 So. 2d 567, 571 (1965) ("A person cannot avoid a written contract which he has entered into on the ground that he did not read it or have it read to him. . . ." (internal quotation marks omitted) (quoting 13 C.J. 370)).

¶19.    Mama Kio's also claims that the arbitration clause was substantively unconscionable because it was oppressive and onesided. However, the arbitration agreement pertains to claims of either party and does not benefit the credit-card processing companies only. It is equally binding upon the credit-card processing companies and Mama Kio's. The credit-card processing companies will not be shielded from any negligence that they may have committed. All claims, including Mama Kio's claim that the credit-card processing companies were grossly negligent, will be heard and resolved during arbitration. This issue is without merit.

¶20.    We find that the trial court did not err by compelling Mama Kio's to arbitrate its cross-claims against the credit-card processing companies. A valid arbitration agreement exists, and the disputes alleged by Mama Kio's all fall within that arbitration agreement. No legal constraints are present that would prevent going forward with arbitration. We find that the trial court did not err by compelling Mama Kio's to arbitrate its cross-claims.

### IV.    Is LAGB bound by the arbitration clause contained in the contract entered into by Mama Kio's and the credit-card processing companies?

¶21.    LAGB argues that it never contracted with any of the credit-card processing companies and cannot be bound by any contract between Mama Kio's and those companies. LAGB contends that no consideration passed between LAGB and any of the credit-card

processing companies, that LAGB had no discussion with those companies about arbitration, and that no arbitration agreement ever was signed. Thus, LAGB argues, it and the companies never reached a sufficiently definite agreement to arbitrate. Finally, LAGB asserts that there was no mutual assent on its part to arbitrate any claims.

¶22. The credit-card processing companies respond, arguing that the trial court correctly held that LAGB's claims fell within the scope of the arbitration agreement. Because LAGB's theory is based on the companies' breaching the agreement with Mama Kio's, the companies argue that LAGB's claims arise out of and relate to that agreement.

¶23. A party will not be required to submit to arbitration "any dispute which he has not agreed so to submit." *Adams v. Greenpoint Credit, LLC*, 943 So. 2d 703, 708 (Miss. 2006) (internal quotation marks omitted) (quoting *Pre-Paid Legal Servs. v. Battle*, 873 So. 2d 79, 83 (Miss. 2004)).

> Since arbitration provisions are "contractual in nature, the general rule is that 'a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit.'" *Qualcomm* [, *Inc. v. Am. Wireless License Grp.*], 980 So. 2d [261,] 269 [(Miss. 2007)] (quoting *Adams v. Greenpoint Credit, LLC*, 943 So. 2d 703, 708 (Miss. 2006)). *See also Bridas S.A.P.I.C. v. Gov't of Turkmenistan*, 345 F.3d 347, 354 n.3 (5th Cir. 2003) (quoting *Westmoreland v. Sadoux*, 299 F.3d 462, 465 (5th Cir. 2002)) (arbitration agreements apply to nonsignatories only "*in rare circumstances*."). However, "a non-signatory party may be bound to an arbitration agreement if so dictated by the ordinary principles of contract and agency." *Miss. Care Ctr. of Greenville, LLC v. Hinyub*, 975 So. 2d 211, 216 (Miss. 2008) (quoting *Washington Mut. Fin. Group, LLC v. Bailey*, 364 F.3d 260, 266 (5th Cir. 2004)). For example, "a signatory may enforce an arbitration agreement against a non-signatory if the non-signatory is a third-party beneficiary . . . ." *Qualcomm*, 980 So. 2d at 269 (citing *Adams*, 943 So. 2d at 708).

***Scruggs v. Wyatt***, 60 So. 3d 758, 767 (Miss. 2011) (emphasis added). A third-party beneficiary exists

> (1) When the terms of the contract are expressly broad enough to include the third party either by name as one of a specified class, *and* (2) the said third party was evidently within the intent of the terms so used, the said third party will be within its benefits, *if* (3) the promisee had, in fact, a substantial and articulate interest in the welfare of the said third party in respect to the subject of the contract.

***Yazoo & M.V.R. Co. v. Sideboard***, 161 Miss. 4, 133 So. 669, 671 (1931) (emphasis added). "In other words, the right of the third party beneficiary to maintain an action on the contract must spring from the terms of the contract itself." ***Adams***, 943 So. 2d at 709 (emphasis omitted) (quoting ***Burns v. Washington Savings***, 251 Miss. 789, 171 So. 2d 322, 325 (1965)). "Only in the rarest of circumstances, and with caution, should we shackle a citizen to an agreement of others that strips the citizen of his or her constitutional right to a trial by jury." ***Olshan Found. Repair Co. of Jackson, LLC v. Moore***, 251 So. 3d 725, 728 (Miss. 2018) (citing Miss. Const. art. 3, § 31; ***Pinnacle Trust Co., L.L.C. v. McTaggart***, 152 So. 3d 1123, 1127 (Miss. 2014)). We must determine if this case presents one of those "rare circumstances" in which nonsignatories should be bound by an arbitration agreement. We find that this is not such a circumstance.

¶24. LAGB has not made a contract claim against any of the credit-card processing companies. LAGB alleges tort claims of negligence, tortious interference with a contract, and tortious interference with a prospective business advantage. If LAGB can sustain its claims without any reference to the contracts or agreements between or among Mama Kio's and the credit-card processing companies, its causes of action are not subject to arbitration. LAGB

is not bound to the terms of Mama Kio's contracts, including the arbitration provisions. The trial court's order compelling arbitration as to LAGB is reversed, and this case is remanded for LAGB to pursue claims it may have against Mama Kio's and the credit-card processing companies consistent with this opinion.

## CONCLUSION

¶25. The trial court's order compelling arbitration as to Mama Kio's cross-claims against the credit-card processing companies is affirmed. However, the trial court erred by compelling LAGB to arbitrate its claims against Mama Kio's and the credit-card processing companies. That portion of the order is reversed, and LAGB's claims against Mama Kio's and the credit-card processing companies are remanded for proceedings consistent with this opinion.

¶26. **AFFIRMED IN PART; REVERSED AND REMANDED IN PART.**

**KITCHENS AND KING, P.JJ., COLEMAN, MAXWELL, BEAM, CHAMBERLIN, ISHEE AND GRIFFIS, JJ., CONCUR.**