*604 DICKINSON, Presiding Justice,
for the Court:
¶ 1. When Express Check Advance of Mississippi, LLC, employed Lacie Smith, she agreed to submit “any employment-related dispute” to arbitration. Later, in response to her termination, Smith commenced legal proceedings against Express Check in circuit court. The trial judge compelled arbitration and Smith appealed. We affirm.
FACTS AND PROCEDURAL HISTORY
¶ 2. When Express Check hired Smith for a clerical position, she signed a two-page document entitled “Non-Competition and Confidentiality Agreement.” Section six of that document stated:
6. ENFORCEMENT.
6.1 Injunctive Relief. Associate acknowledges that it would be difficult to fully compensate the Employer for damages resulting from any breach by Associate of the provisions of, this Agreement. Accordingly, Associate agrees that, in addition to, but not to the exclusion of, any other remedy, the Employer shall have the right to enforce the provisions of this Agreement by applying for and obtaining temporary and permanent restraining orders or injunctions from a court of competent jurisdiction without the necessity of filing a bond therefore, and without the necessity of proving actual damages, and the Employer shall be entitled to recover from Associate its reasonable attorneys’ fees and costs in enforcing the provisions of this Agreement.
6.2 Settlement by Arbitration. Pursuant to the terms of this Agreement, and in valuable consideration received in exchange therefore, the parties hereto agree that any employment-related dispute, controversy or claim that Associate may have with Employer and/or any of its associates, officers, members, managers, governors, parents, subsidiaries, affiliates or agents, in their capacity as such or otherwise, or that Employer and/or any of its associates, officers, members, managers, governors, parents, subsidiaries, affiliates or agents may have with Associate, shall be resolved only through arbitration and not through litigation in federal, state or local court.
Associate agrees that he/she cannot bring any claim or lawsuit, or act as a lead plaintiff in or otherwise participate in any class action lawsuit, in any federal, state or local court involving this Agreement, application or candidacy for employment, employment, or cessation of employment with Employer, including, but in no way limited to, claims arising under Title VII of the Civil Rights Act of 1964, the Civil Rights Act of 1991, the Age Discrimination in Employment Act, the Americans with Disabilities Act, the Family and Medical Leave Act of 1993, 42 U.S.C. § 1981, the Associate Retirement Income Security Act (ERISA), the Fair Labor Standards Act, the Occupational Health and Safety Act, the Worker Adjustment and Retraining Notification Act, the human rights act, or similar act, of any state, the public protection act, or similar act, of any state, any claim based on express or implied contract, any claims of promissory estoppel, any action arising in tort, including, but in no way limited to, libel, slander, defamation, intentional infliction of emotional distress, or negligence, any claim for wrongful discharge, any constitutional claims or any claims under all laws relating to the violation of public policy, retaliation or compensation, any claims arising under employment or disability discrimination or *605 whistleblower laws, or any other statutory or common-law claims under federal, state or local law. A dispute, controversy or claim is also considered subject to this policy if it arises or involves any issue pertaining to this Agreement, the formation of this Agreement, the scope of this Agreement or the Party’s performance of this Agreement. Associate understands that he/she is waiving the right to a jury trial for any such claim. This provision is mutually binding upon both Employer and Associate, as indicated by the acknowledgment set forth below.
Associate understands that he/she has the right to be represented by the attorney of his/her choice in pursuing any employment-related dispute, controversy or claim under this Agreement. Associate further understands and agrees that the decision of the Arbitrator will be FINAL AND BINDING on all parties to the dispute. There is no appeal on the merits of the dispute to federal, state or local courts. ’
This section is to be construed pursuant to the terms of the Federal Arbitration Act, 9 U.S.C. § 1 et seq. The provisions of any arbitration act or statute under the laws of the State of Mississippi, do not apply to this section.
¶ 3. Section seven included miscellaneous provisions, including a severability clause, a choice-of-law provision, and a notation that “[t]he headings contained in this Agreement are for reference purposes only and shall not in any way affect the meaning or interpretation of this Agreement.”
¶ 4. Smith signed the agreement and separately initialed an acknowledgment accepting the arbitration provision. She also initialed an acknowledgment that she had read the entire agreement.
¶ 5. After Express Check terminated Smith, she filed suit, claiming that she was fired for reporting her supervisor’s illegal acts. Express Check answered, denied the allegations, and moved to compel arbitration pursuant to the “Non-Competition and Confidentiality Agreement.” Smith responded to Express Check’s motion by arguing that the agreement was procedurally and substantively unconscionable, that she never knowingly agreed to arbitrate her claims, and that she signed the agreement under duress.
¶ 6. At the hearing on its motion, Express Check introduced the agreement and Smith testified, arguing that the arbitration clause was procedurally unconscionable because no one told her to read the agreement or explained its meaning. She also argued that the agreement was substantively unconscionable because she lacks the financial resources to bear the cost of arbitration.
¶ 7. In his order compelling arbitration, the trial judge stated that the agreement was not procedurally unconscionable because, unless illiterate, Smith had a duty to read it, and that she could have refused to sign the agreement and sought employment elsewhere. He also found that the agreement was not substantively unconscionable because Smith failed to produce any evidence of the cost of arbitration. Smith appealed.
ANALYSIS
¶ 8. In reviewing an appeal of an order compelling arbitration, we review the trial judge’s factual findings under an abuse-of-discretion standard,[1] and we con *606 duct a de novo review of all legal conclusions.[2]

The Federal Arbitration Act

¶ 9. Through the Federal Arbitration Act, Congress imposed a national policy in favor of arbitration.[3] Arbitration agreements “shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.”[4] The statute’s effect extends to arbitration agreements in employment contracts.[5]
¶ 10. The Act ensures that “[arbitration agreements and other contract terms should be on equal footing, in that state courts may not invalidate arbitration agreements under laws that affect only arbitration agreements,”[6] and that “arbitration clauses shall not receive especial treatment not otherwise available under basic state contract principles.”[7] So, courts must compel arbitration’ if the parties validly agreed to arbitrate the dispute at issue.[8]
¶ 11. To determine whether parties agreed to arbitrate their disputes, courts invoke a two-pronged inquiry. Under the first prong, a court must ascertain whether an agreement to arbitrate exists, the scope of which encompasses the parties’ dispute.[9] Under the second prong, the court must question “whether legal constraints external to the parties’ agreement foreclosed arbitration of those claims.”[10] Under this prong, state contract defenses may invalidate the agreement to arbitrate as they would any other contractual provision.[11] But because of the national policy favoring arbitration, the party opposing arbitration bears the burden to prove that a contract defense applies in the particular case.[12]
¶ 12. Here, neither party disputes that the arbitration clause purports to submit Smith’s claim to arbitration. Indeed, the arbitration provision’s broad language references “all employment-related disputes,” and it specifically includes “any claim for wrongful discharge.” Instead, Smith attacks the enforcement of that provision based on the doctrine of unconscionability, one of the “legal constraints external to the parties’ agreement” which may fore *607 close enforcement.[13]

Unconscionability

¶ 13. So important to our Founders was the freedom to contract without interference from the government or the courts, that they constitutionally prohibited any State from passing any law “impairing the obligations of contracts. ...”[14] That is not to say that our Founders believed courts should never, for any reason, set aside a contractual obligation. But such instances should be the rare exception rather than the general rule; and the basis for granting such extraordinary relief to a contracting party should not be a judge’s subjective conclusion that the contract is not fair. Fairness is for the parties to decide. That is why the doctrine of unconscionability traditionally has applied only to the most egregious of contractual situations.
¶ 14. An unconscionable contract is “one such as no man in his senses and not under a delusion would make on the one hand, and as no honest and fair man would accept on the other....”[15] We previously have held:
Corbin expounds on the meaning of “unconscionable” as follows:
“Unconscionable” is a word that defies lawyer-like- definition. It is a term borrowed from moral philosophy and ethics. As close to a definition as we are likely to get is “that which ‘affronts the sense of decency.’ ” A much-quoted judicial definition is “an absence of meaningful choice on the part of one of the parties together with contract terms which are unreasonably favorable to the other party.” [16]
Our precedent follows the Williams (“absence of meaningful choice”) language as quoted ' above from Corbin. Unconscionability can be procedural or substantive. Under “substantive uncon-scionability, we look within the four corners of an agreement in order to discover any abuses relating to the specific terms which violate the expectations of, or cause gross disparity between, the contracting parties.” Substantive un-conscionability is proven by oppressive contract terms such that “there is a one-sided agreement whereby one party is deprived of all the benefits of the agreement or left without a remedy for another party’s nonperformance or breach....”[17]
¶ 15. This passage reflects certain characteristics of a substantively unconscionable contract. An unconscionable contract “affronts the sense of decency.”[18] The terms of a substantively unconscionable contract are so unreasonably favorable to one party that the contract imposes oppressive terms on the weaker *608 party.[19] And unconscionability may be evidenced, but not established, by .showing that the contract is one of adhesion.[20]
¶ 16. Contracts of adhesion “are those that are ‘drafted unilaterally by the dominant party and then presented on a ‘take-it-or-leave-it’ basis to the weaker party who has no real opportunity to bargain about its terms. Such contracts are usually prepared in printed form....’”[21] The contract before us may be one of adhesion. It appears to be a preprinted form contract prepared by Express Check. But Smith failed to present any evidence that the contract was presented on a take-it-or-leave-it basis. So we cannot know for sure. And even if we could, “finding a contract to be one of adhesion does not automatically mean that the contract or any provision thereof is substantively unconscionable.” [22] So, regardless, we must look to the agreement’s terms to determine if they are oppressive.
¶ 17. Looking to the agreement, we cannot say its terms are so one-sided as to become substantively unconscionable. Section 6.2 of the agreement sets out a mutually binding arbitration clause. Were we to consider this evidence of unconscion-ability, we would run afoul of the Federal Arbitration Act’s mandate to favor arbitration.
¶ 18. Section 6.1, however, presents two one-sided terms. First, while the contract relegated both parties’ claims to arbitration, it maintained Express Check’s right to seek injunctive relief from a court of competent jurisdiction. We have held that an arbitration agreement, which submitted one party’s claims to arbitration while maintaining the broad access to judicial remedies for the other party’s claims was unconscionable.[23] But that case is distinguished because here — except for the limited right to seek injunctive relief — Express Check is bound to arbitration as well.
¶ 19. Second, that section provides that Smith must pay reasonable attorneys’ fees and costs incurred by Express Check. The provision is found in the injunctive-relief section of the agreement. It is the third statement in a sentence which otherwise solely relates to injunctive relief. So a fair reading of the agreement leads to the conclusion that it applies to injunctive relief alone. And the provision does not absolutely entitle Express Check to attorneys’ fees and costs. The clause states “... and the Employer shall be entitled to recover from associates its reasonable attorneys’ fees and costs in enforcing the provisions of this agreement.” (Emphasis added.) In order to “enforce” an agreement, one must prevail on his contract claim. The provision would be of no benefit to Express Check unless it prevailed in obtaining injunctive relief against Smith.
¶ 20. So, while the provision does favor Express Check to some degree, we cannot say it is so one-sided as to be oppressive or unconscionable. Nor do we find it substantively unconscionable. As stated above, Smith bears the burden to show that the agreement is unconscionable,[24] *609 and, although she testified to her limited financial means, Smith failed to present any evidence of the costs of arbitration. Without that evidence, we cannot say that costs prohibit Smith from pursuing arbitration.
¶21. To find the agreement substantively unconscionable, the dissent incorrectly shifts the burden of proof to Express Check, presumes facts unsupported by the evidence, and misconstrues the evidence presented at trial. First, the dissent states that the agreement was presented to Smith on a take-it-or-leave-it basis. The record is devoid of one shred of evidence to support that statement. Next, the dissent states that “unemployment rates were high” when Smith sought employment from Express Check, but the record is devoid of a single reference to employment rates at that time. Then, the dissent states that “[i]t is also reasonable to assume that market factors, i.e., difficulty finding another job, prevented Smith from contracting with another party or employer.” Once again, Smith presented no evidence that alternative employment was unavailable or that she even had attempted to seek other employment.
¶ 22. Similarly, the dissent rebukes the trial judge’s statement that Smith could have “sought employment elsewhere” by stating that “there is no evidence as to how difficult obtaining such employment might have been or how much such employment might have paid, as compared to Express Check.” True, no such evidence was presented. But if Smith wanted to rely on the lack of alternative employment to show that the agreement was unconscionable, she had the burden to establish those facts, and she failed to do so. Next, the dissent misstates the judicial relief available to Express Check by stating “[i]t allows Express Check to use judicial remedies for virtually all of the breaches of the contract that Smith could conceivably accomplish. ...” Express Check maintained only a limited right to injunctive relief, not an unbridled right to judicial relief for Smith’s breaches. Finally, the dissent assumes, without any evidentiary support, that Smith was so desperate for a job that she signed an unreasonably unfavorable agreement to obtain much-needed employment.
¶ 23. Simply put, the dissent’s view cannot be correct, because Smith had the burden of proof and failed to present evidence in support of these considerations. So we cannot say the agreement was substantively unconscionable.
¶ 24. Likewise, we do not find the agreement is proeedurally unconscionable. Procedural unconscionability is established by showing “a lack of knowledge, lack of voluntariness, inconspicuous print, the use of complex legalistic language, disparity in sophistication or bargaining power of the parties and/or a lack of opportunity to study the contract and inquire about the contract terms.”[25]
¶ 25. The print of the arbitration agreement is not inconspicuous. The arbitration agreement is the exact same font as the rest of the contract. It appears at the bottom of page one and the top of page two. It includes a bolded, underlined, and italicized heading stating “Settlement by Arbitration.” It also uses boldface print when its states all disputes “shall be resolved only through arbitration and not through litigation in federal, state or local court.” Further, Smith was required to initial an acknowledgment, set into the text of the arbitration provision, which stated “[b]oth the applicant/associ.ate and the Employer Representative ini *610 tial below to signify acceptance of the arbitration provision.” So we cannot conclude that the provision contains inconspicuous print.
¶26. While the clause does contain some legalistic language, its key terms relating to arbitration are unmistakable. The clause provides “that any employment-related dispute, controversy or claim ... shall be resolved only through arbitration and not through litigation in federal, state or local court” and “that the decision of the Arbitrator will be FINAL AND BINDING on all parties to the dispute. There is no appeal on the merits of the dispute to federal, state or local courts.” These statements provided Smith substantial notice that she was agreeing to forego any right to judicial review.
¶ 27. What is more, Smith failed to produce any evidence that she didn’t know what she signed, did so involuntarily, or lacked an opportunity to review and inquire about the terms. Smith admitted that she had signed the document. And while she testified that no one had told her to read the document or explained its terms, she conceded that she could have read it. The law imposes a duty on a contracting party to read what he or she signs.[26] Further, Smith never asked any questions about the document she signed. Simply put, Smith bore the burden to establish these facts, and she failed to do so.
¶ 28. That leaves only the disparity in sophistication or bargaining power of the parties as a potential factor in favor of procedural unconscionability. Even if we were to assume that Express Check possesses an inherent advantage in sophistication and bargaining power over Smith, that imbalance did not result in oppressive terms. Smith simply has failed to produce any evidence of procedural unconscionability.
CONCLUSION
¶ 29. Smith failed to satisfy her burden to show that the arbitration agreement is either substantively or procedurally unconscionable, so the trial judge properly compelled arbitration. We affirm.
¶ 30. AFFIRMED.
RANDOLPH, P.J., LAMAR, PIERCE AND COLEMAN, JJ., CONCUR. KING, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY WALLER, C.J., AND KITCHENS, J. CHANDLER, J., NOT PARTICIPATING.

. III. Cent. R.R. Co. v. McDaniel, 951 So.2d 523, 526 (Miss.2006).

. Virginia Coll., LLC v. Blackmon, 109 So.3d 1050, 1053 (Miss.2013) (citing Univ. Nursing Assocs., PLLC v. Phillips, 842 So.2d 1270, 1276 (Miss.2003)).

. Covenant Health & Rehab., LP v. Estate of Moulds, 14 So.3d 695, 698 (Miss.2009) (citing IP Timberlands Operating Co. v. Denmiss Corp., 726 So.2d 96, 107 (Miss.1998) (quoting Southland Corp. v. Keating, 465 U.S. 1, 10, 104 S.Ct. 852, 79 L.Ed.2d 1, 12 (1984) (citing 9 U.S.C. § 2 (1976)))).

. 9 U.S.C. § 2 (1976).

. Circuit City Stores, Inc. v. Adams, 532 U.S. 105, 109, 121 S.Ct. 1302, 1306, 149 L.Ed.2d 234 (2001).

. Moulds, 14 So.3d at 699 (citing Doctor's Assocs. v. Casarotto, 517 U.S. 681, 687, 116 S.Ct. 1652, 1656, 134 L.Ed.2d 902, 909 (1996)).

. Moulds, 14 So.3d at 699.

. Rogers-Dabbs Chevrolet-Hummer, Inc. v. Blakeney, 950 So.2d 170, 173 (Miss.2007).

. Id. (quoting East Ford, Inc. v. Taylor, 826 So.2d 709, 713 (Miss.2002)).

. Rogers-Dabbs, 950 So.2d at 173 (quoting East Ford, 826 So.2d at 713).

. Moulds, 14 So.3d at 699.

. Norwest Fin. Miss., Inc. v. McDonald, 905 So.2d 1187, 1193 (Miss.2005) (citing Green Tree Fin. Corp.-Alabama v. Randolph, 531 U.S. 79, 92, 121 S.Ct. 513, 522, 148 L.Ed.2d 373 (2000)).

. Moulds, 14 So.3d at 699 (quoting East Ford, 826 So.2d at 713).

. U.S. Const., art. I, § 10.

. Terre Haute Cooperage v. Branscome, 203 Miss. 493, 35 So.2d 537, 541 (1948).

. Moulds, 14 So.3d at 699 (quoting Corbin on Contracts § 29.4 (2009) (quoting Gimbel Bros., Inc. v. Swift, 62 Misc.2d 156, 307 N.Y.S.2d 952, 954 (1970); Williams v. Walker-Thomas Furniture Co., 350 F.2d 445, 449 (D.C.Cir.1965))).

. Moulds, 14 So.3d at 699 (citing Entergy Miss., Inc. v. Burdette Gin Co., 726 So.2d 1202, 1207 (Miss.1998); East Ford, 826 So.2d at 714; Vicksburg Partners, L.P. v. Stephens, 911 So.2d 507, 521 (Miss.2005), overruled on other grounds by Moulds, 14 So.3d at 706; Bank of Ind., Nat'l Ass'n v. Holyfield, 476 F.Supp. 104, 110 (S.D.Miss.1979)).

. Moulds, 14 So.3d at 699 (internal citations omitted).

. Id.

. Id. at 701 (citing Stephens, 911 So.2d at 523, overruled on other grounds by Moulds, 14 So.3d at 706).

. Moulds, 14 So.3d at 701 (quoting East Ford, 826 So.2d at 716).

. Moulds, 14 So.3d at 701 (citing Stephens, 911 So.2d at 523, overruled on other grounds by Moulds, 14 So.3d at 706).

. Moulds, 14 So.3d at 700 (citing Pridgen v. Green Tree Fin. Servicing Corp., 88 F.Supp.2d 655, 658 (S.D.Miss.2000)).

. Norwest, 905 So.2d at 1193 (citing Green Tree, 531 U.S. at 92, 121 S.Ct. 513).

. East Ford, 826 So.2d at 714 (quoting Prid-gen, 88 F.Supp.2d at 657).

. McKenzie Check Advance of Ms., LLC v. Hardy, 866 So.2d 446, 455 (Miss.2004).