# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**FILED**

July 16, 2020

No. 19-60595
Summary Calendar

Lyle W. Cayce
Clerk

DENNIS WILLIAMS; MARY ANN WILLIAMS; CARRIA WILLIAMS
WALTER,

> Plaintiffs–Appellants,

v.

COMMUNITY BANK, ELLISVILLE; COMMUNITY BANCSHARES OF
MISSISSIPPI, INCORPORATED; COMMUNITY OPERATIONS,
INCORPORATED; SETH MILES; DOES 1 THROUGH 10,

> Defendants–Appellees.

Appeal from the United States District Court
for the Southern District of Mississippi
USDC No. 2:19-CV-78

Before OWEN, Chief Judge, and SOUTHWICK and WILLETT, Circuit Judges.

PER CURIAM:*

This case concerns the enforceability of an arbitration agreement.
Dennis Williams, Mary Ann Williams, and Carria Williams Walter (the

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not
be published and is not precedent except under the limited circumstances set forth in 5TH
CIR. R. 47.5.4.

No. 19-60595

Williamses) obtained a loan from Community Bank[1] and subsequently sued Community Bank in Mississippi state court, requesting declaratory, injunctive, and other relief in relation to that loan. After removing the case to federal court, Community Bank filed a motion to compel arbitration and stay proceedings pending arbitration. The district court granted the motion, and the Williamses appealed. We affirm.

# I

In late 2015, Dennis Williams, Mary Ann Williams and their daughter, Carria Williams Walter, decided to purchase 23 acres of vacant land in Sumrall, Mississippi. According to the Williamses, they planned to build a smaller personal residence on the 23 acres of vacant land, downsizing from their larger family home located directly across the street. The Williamses did not have the funds to purchase the land outright, so they approached Community Bank for a loan.

The Williamses allege that they intended to obtain a consumer loan from Community Bank but that a Community Bank representative convinced them to form a Limited Liability Company (LLC) and purchase the land with a business loan. The Bank's representative allegedly told the Williamses that the interest rate for the commercial loan would be lower than the interest rate for a consumer loan, and that the LLC would protect them from personal liability. The Williamses eventually formed an LLC, which obtained a business loan to purchase the land.

The Williamses signed an arbitration agreement as part of this transaction. According to the arbitration agreement, "any dispute or controversy" arising from the transaction between the Williamses, Community

---

[1] Community Bank, Ellisville is now known as Community Bank of Mississippi. Community Bancshares of Mississippi, Inc. is the parent corporation of Community Bank of Mississippi and Community Operations, Inc.

No. 19-60595

Bank, and the newly formed LLC would be resolved via binding arbitration. Each of the Williamses signed the arbitration agreement in an individual capacity. Carria Williams and Dennis Williams each signed the agreement a second time on behalf of CAAAW, LLC.

In 2019, the Williamses filed a complaint for declaratory, injunctive, and other relief in the Circuit Court of Lamar County, Mississippi. In their complaint, the Williamses disclaimed any liability on the loan, arguing that Community Bank had violated numerous state and federal consumer protection laws throughout the loan process. Community Bank removed the case to the Southern District of Mississippi based on federal question jurisdiction. Community Bank then filed a motion to compel arbitration and stay proceedings pending arbitration with the district court. The district court granted Community Bank's motion and dismissed the case with prejudice. This appeal followed.

## II

The Williamses do not contest that the dispute falls within the scope of the purported arbitration agreement. Rather, they contend that there was not a valid agreement to arbitrate.

"There are two types of validity challenges under § 2 [of the Federal Arbitration Act]."[2] The first type of challenge focuses specifically on "the validity of the agreement to arbitrate."[3] The second type of challenge focuses on the validity of the "contract as a whole, either on the ground that directly affects the entire agreement (e.g., the agreement was fraudulently induced), or on the ground that the illegality of one of the contract's provisions renders the whole contract invalid."[4] "[O]nly the first type of challenge is relevant to a

---

[2] *Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 70 (2010).

[3] *Id.* (quoting *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 444 (2006)).

[4] *Id.* (quoting *Cardegna*, 546 U.S. at 444).

court's determination whether the arbitration agreement at issue is enforceable."[5]  "That is because § 2 states that a written provision to settle a controversy by arbitration is valid, irrevocable, and enforceable *without mention* of the validity of the contract in which it is contained."[6]  This does not mean, however, that agreements to arbitrate are entirely immune from attack. Indeed, the Federal Arbitration Act specifically allows for "agreements to arbitrate to be invalidated by 'generally applicable contract defenses, such as fraud, duress, or unconscionability.'"[7]  Nonetheless, "because of the national policy favoring arbitration, the party opposing arbitration bears the burden to prove the contract defense applies in a particular case."[8]

In this case, the Williamses argue that they did not have a valid agreement to arbitrate with Community Bank because the purported arbitration agreement they signed was both procedurally and substantively unconscionable.  After de novo review,[9] we conclude that the Williamses had a valid agreement to arbitrate with Community Bank; the agreement was neither procedurally nor substantively unconscionable.

## A

We begin with the Williamses argument concerning procedural unconscionability.

According to the Mississippi Supreme Court,

---

[5] *Id.*

[6] *Id.* (internal quotation marks omitted) (emphasis in original).

[7] *Lefoldt ex rel. Natchez Reg'l Med. Ctr. Liquidation Tr. v. Horne, L.L.P.*, 853 F.3d 804, 818 (5th Cir. 2017), *as revised* (April 12, 2017) (quoting *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011)).

[8] *Smith v. Express Check Advance of Miss., LLC*, 153 So. 3d 601, 606 (Miss. 2014) (citing *Norwest Fin. Miss., Inc. v. McDonald*, 905 So. 2d 1187, 1193 (Miss. 2005)).

[9] *See Crawford Prof'l Drugs, Inc. v. CVS Caremark Corp.*, 748 F.3d 249, 256 (5th Cir. 2014) ("This court reviews an order compelling arbitration de novo." (quoting *Paper, Allied-Indus. Chem. & Energy Workers Int'l Union, Local 4-12 v. Exxon Mobil Corp.*, 657 F.3d 272, 276 (5th Cir. 2011)).

No. 19-60595

> The indicators of procedural unconscionability generally fall into two categories: (1) lack of knowledge, and (2) lack of voluntariness. A lack of knowledge is demonstrated by a lack of understanding of the contract terms arising from inconspicuous print or the use of complex, legalistic language, disparity in sophistication of parties, and lack of opportunity to study the contract and inquire about contract terms. A lack of voluntariness is demonstrated in contracts of adhesion when there is great imbalance in the parties relative bargaining power, the stronger party's terms are unnegotiable, and the weaker party is prevented by market factors, timing or other pressures from being able to contract with another party on more favorable terms or to refrain from contracting at all.[10]

Here, the Williamses argue that "they did not receive truthful information, were unfamiliar with the pre-printed, complexly-worded agreement, lacked bargaining power, and experienced a significant gap in financial sophistication by comparison to the other transacting party." They contend that the loan agreement was "essentially a contract of adhesion . . . unilaterally drafted, induced, and facilitated" by Community Bank. But these arguments do not meet the threshold for procedural unconscionability.

First, the Williamses have not shown that they lacked knowledge or an understanding of the terms in the arbitration agreement. Despite the Williamses allegations to the contrary, the arbitration agreement cannot be considered inconspicuous or complexly worded. The arbitration agreement uses all capital letters to emphasize in plain terms that the parties are waiving

---

[10] *East Ford, Inc. v. Taylor*, 826 So. 2d 709, 716 (Miss. 2002) (quoting *Entergy Miss, Inc. v. Burdette Gin Co.*, 726 So. 2d 1202, 1207 (Miss. 1998)); *see also id.* ("[T]he fact that an arbitration agreement is included in a contract of adhesion renders the agreement procedurally unconscionable only where the stronger party's terms are unnegotiable and 'the weaker party is prevented by market factors, timing or other pressures from being able to contract with another party on more favorable terms or to refrain from contracting at all." (quoting *Burdette Gin Co.*, 726 So. 2d at 1207)).

5

their right to litigate their disputes in court and submitting to binding arbitration. No other portion of the agreement is given such emphasis. The Williamses claim that they experienced a "significant gap in financial sophistication" compared to Community Bank. But the Williamses do not allege that they "lacked an opportunity to review and inquire about the terms" in the arbitration agreement, or that they signed the arbitration agreement without reading or understanding its terms.[11]

Second, the Williamses have not shown that they signed the agreement to arbitrate involuntarily. The Williamses allege that Community Bank falsely represented that they would have a lower interest rate and protection from personal liability with a business loan as opposed to a consumer loan. They claim that they agreed to a business loan instead of a consumer loan because Community Bank supplied them with this false information. Importantly, however, the Williamses do not allege that Community Bank ever provided false information concerning the arbitration agreement, or that they were fraudulently induced into signing the agreement to arbitrate. As the Supreme Court has stated, parties challenging an arbitration agreement must direct their arguments at the arbitration agreement, not the validity of the contract as a whole.[12] Here, the Williamses' allegations of fraud are all directed at the contract as a whole.

The Williamses also argue that they lacked bargaining power as compared to Community Bank and that their loan agreement was "essentially a contract of adhesion." But the Williamses arguments do not meet the standard for procedural unconscionability under Mississippi law. Although they are strong evidence of procedural unconscionability, contracts of adhesion

---

[11] *See Smith v. Express Check Advance of Miss., LLC*, 153 So. 3d 601, 610 (Miss. 2014).
[12] *See Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 70 (2010).

are not automatically involuntary and unconscionable.[13] Here, the Williamses have failed to provide any evidence, or even allege, that they were "prevented by market factors, timing or other pressures" from contracting with another bank on more favorable terms or refraining from contracting at all.[14] In fact, the Williamses admit that they "simply went along with [the agent at Community Bank] and trusted his integrity." We cannot conclude that the arbitration agreement was procedurally unconscionable due to a lack of voluntariness.

## B

We next address the Williamses' argument concerning substantive unconscionability.

Under Mississippi law, substantive unconscionability is determined by "look[ing] within the four corners of an agreement in order to discover any abuses relating to the specific terms which violate the expectations of, or cause a gross disparity between, the contracting parties."[15] "Substantive unconscionability is proven by oppressive contract terms such that there is a one-sided agreement whereby one party is deprived of all the benefits of the agreement or left without a remedy for another party's nonperformance or breach . . . ."[16] Nonetheless, the Supreme Court has made clear that the mere "'risk' that [a litigant] will be saddled with prohibitive costs is too speculative to justify the invalidation of an arbitration agreement."[17] "To invalidate [an

---

[13] *East Ford*, 826 So. 2d at 716 (quoting *Hughes Training, Inc. v. Cook*, 254 F.3d 588, 593 (5th Cir. 2001)).

[14] *Id.* (quoting *Burdette Gin Co.*, 726 So. 2d at 1207).

[15] *Smith*, 153 So. 3d at 607 (quoting *Covenant Health & Rehab. of Picayune, LP v. Estate of Moulds*, 14 So. 3d 695, 699 (Miss. 2009)).

[16] *Id.* (internal quotation marks omitted) (quoting *Moulds*, 14 So. 3d at 699).

[17] *Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79, 91 (2000).

arbitration] agreement on that basis would undermine 'the liberal federal policy favoring arbitration agreements.'"[18]

In this case, the Williamses argue that the arbitration agreement is substantively unconscionable because it unfairly shifts the burden of excessive fees onto the Williamses. The Williamses specifically take issue with a fee shifting clause in the arbitration agreement, which requires the claimant to pay the administrative and arbitrator fees for any claim exceeding $75,000 in damages. Given the initial mortgage far exceeded $75,000, the Williamses argue that they will inevitably be saddled with thousands of dollars in fees under the American Arbitration Association fee schedule. The Williamses also take issue with the provision in the arbitration agreement entitling the victor in arbitration to collect fee reimbursements from the losing party. According to the Williamses, plaintiffs should "no more pay the fees of an arbitrator than they should compensate the judges before whom they appear."

The terms of the arbitration agreement in this case, however, cannot be considered one-sided or oppressive. They do not deprive the Williamses of all the benefits of the agreement, nor do they leave the Williamses without a remedy in the event of a breach by Community Bank. Under the terms of the arbitration agreement, the Williamses would have to pay the administrative and arbitrator fees only if they brought a claim for greater than $75,000; the agreement does not require the Williamses to pay the administrator and arbitrator fees if Community Bank brought the claim.[19] In fact, the arbitration

---

[18] *Id.* (quoting *Moses H. Cone. Mem'l Hosp.*, 460 U.S. 1, 24 (1983)).

[19] The arbitration agreement states:

If Customers asserts a Claim covered by the Supplementary Procedures for actual damages greater than $75,000 or that is non-monetary, or if Customer asserts a Claim of any type that is not covered by the Supplementary Procedures, Customer shall be responsible for paying all administrative fees and arbitrator(s) fees as provided in the AAA's Commercial Fee Schedule.

No. 19-60595

agreement specifically states that "[Community] Bank shall be responsible for paying all administrative fees and arbitrator(s) fees beyond those that are the responsibility of [the Williamses] under this Agreement."

But even assuming the clause requires the Williamses to pay administrative and arbitrator fees for any claim exceeding $75,000, the agreement allows the Williamses to recover the fees from Community Bank if they prevail in arbitration. It also provides multiple safeguards against excessive fees in the event the Williamses were to lose in arbitration. Specifically, the agreement allows the Williamses to "request a deferral or reduction of the administrative fees of arbitration if paying them would cause extreme hardship." It also vests the arbitrator with discretion to "apportion the administrative fees and expenses and arbitrator fees between [the Williamses] and [Community Bank] as part of the [final] award." These provisions are not unconscionable.

Moreover, we do not agree with the Williamses' argument that the arbitration agreement is substantively unconscionable because it entitles the victor in arbitration to recover fees from the losing party. As the Supreme Court has instructed, the mere "'risk' that [a litigant] will be saddled with prohibitive costs is too speculative to justify the invalidation of an arbitration agreement."[20]

Nor are we convinced by the Williamses' suggestion that plaintiffs should be categorically exempt from paying arbitration fees. The Williamses quote *Cole v. Burns International Secretary Services*,[21] a case from the D.C. Circuit,

---

Bank shall be responsible for paying all administrative and arbitrator(s) fees beyond those that are the responsibility of the customer under this Agreement . . . .

[20] *Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79, 91 (2000).
[21] 105 F.3d 1465 (D.C. Cir. 1997).

No. 19-60595

to support this suggestion. But the Williamses take the quote out of context. *Cole* involved an employment arbitration.[22] Moreover, the arbitration agreement in *Cole* did not specify which party would pay the arbitrator's fees or whether such fees could be waived or reduced in cases of hardship.[23] The court in *Cole* specifically held that an "employee can never be required, as a condition of employment, to pay an arbitrator's compensation in order to secure the resolution of statutory claims under Title VII (any more than an employee can be made to pay a judge's salary)."[24] This does not mean, as the Williamses suggest, that plaintiffs can never be required to pay arbitration fees. We decline to adopt such an interpretation.

In sum, none of the arguments the Williamses advance concerning substantive unconscionability are persuasive. The provisions in the arbitration agreement—including the provision entitling the victor to collect reimbursements from the losing party—are not one-sided or oppressive.

### III

Having determined that the Williamses and Community Bank had a valid agreement to arbitrate, we next address "whether any federal statute or policy renders the claims nonarbitrable."[25] The Williamses argue that their claims are nonarbitrable pursuant to 12 C.F.R. § 1026.36 and 15 U.S.C. § 1602. They also appear to argue separately that 12 U.S.C. §§ 5481, 5531, 5536(a) render their claims nonarbitrable. We address each argument in turn.

According to 12 C.F.R. § 1026.36, "a contract or other agreement for a consumer credit transaction secured by a dwelling . . . may not include terms

---

[22] *Id.* at 1467.

[23] *Id.* at 1483-89; *see also Am. Heritage Life Ins. Co. v. Orr*, 294 F.3d 702, 712 (5th Cir. 2002) (discussing and distinguishing *Cole*).

[24] *Cole*, 105 F.3d at 1468.

[25] *JP Morgan Chase & Co. v. Conegie ex rel. Lee*, 492 F.3d 596, 598 (5th Cir. 2007) (quoting *Wash. Mut. Fin. Grp., LLC v. Bailey*, 365 F.3d 260, 263 (5th Cir. 2004)).

that require arbitration . . . ."   "Consumer credit means credit offered or extended to a consumer primarily for personal, family, or household purposes."[26]   "[T]he adjective 'consumer', used with reference to a credit transaction, characterizes the transaction as one in which [(1)] the party to whom credit is offered or extended is a natural person, and [(2)] the money, property, or services which are the subject of the transaction are primarily for personal, family, or household purposes."[27]

The Williamses argue that their loan was a consumer loan—and, thus, subject to 12 C.F.R. § 1026.36 and 15 U.S.C. § 1602(i)—because their purpose in taking out the loan was personal.  According to the Williamses, the purpose of the loan was to build a personal residence on the 23 acres of vacant land.  Although these arguments may satisfy the second element of "consumer" as defined in 15 U.S.C. § 1602(i), they do not satisfy the first.  The purpose of the loan may have been personal, as the Williamses allege, but the loan was not offered or extended to a natural person.  The undisputed terms of the loan agreement indicate that that Community Bank extended credit to CAAAW, LLC—a business entity, not a natural person.  Indeed, Carria Williams and Dennis Williams specifically signed the agreement in their capacity as manager and member of CAAAW, LLC, respectively.  Because CAAAW, LLC is a business entity and not a natural person, the loan agreement in this case does not meet the first element of "consumer" as defined in 15 U.S.C. § 1602(i) in reference to a consumer credit transaction.  Accordingly, because the loan agreement in this case cannot be considered a consumer credit transaction, neither 12 C.F.R. § 1026.36 nor 15 U.S.C. § 1602 render the Williamses' claims unarbitrable.

---

[26] 12 C.F.R. § 1026.2(a)(12).

[27] 15 U.S.C. § 1602(i).

No. 19-60595

In a separate line of argument, the Williamses argue that Community Bank committed an unfair, deceptive, abusive act, or practice in violation of 12 U.S.C. §§ 5481, 5531, 5536(a) by coaxing the Williamses into forming an LLC and taking out a less favorable commercial loan rather than the residential loan that the Williamses had initially desired.  They appear to argue that a violation of these laws renders their claims unarbitrable.  The Williamses, however, have not provided any authority in their briefing on appeal that suggests a violation of the referenced laws results in the voiding of an otherwise valid arbitration agreement.  Thus, we conclude that the Williamses have failed to provide the court with any federal policy or statute that renders their claim unarbitrable.

*     *     *

For these reasons, we AFFIRM the district court's order on Community Bank's motion to compel arbitration and stay proceedings pending arbitration.