# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2019-CA-01045-COA

VICKI L. CURRIE, INDIVIDUALLY AND AS       APPELLANTS
EXECUTRIX OF THE ESTATE OF CHARLES
MICHAEL "MIKE" CURRIE, AND CURRIE
FAMILY HOLDINGS

v.

CURTIS EDWARD "EDDIE" McNEAL, CARRIE       APPELLEES
BETH RANDALL, McNEAL & RANDALL, A
PRIVATE WEALTH ADVISORY PRACTICE OF
AMERIPRISE FINANCIAL SERVICES, INC.,
AMERIPRISE FINANCIAL SERVICES, INC.
AND RIVERSOURCE LIFE INSURANCE
COMPANY

| | |
|---|---|
| DATE OF JUDGMENT: | 05/22/2019 |
| TRIAL JUDGE: | HON. PAUL S. FUNDERBURK |
| COURT FROM WHICH APPEALED: | LEE COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANTS: | ROBERT M. FREY |
| | PHIL B. ABERNETHY |
| | WILLIAM C. MURPHREE |
| | CAROLINE BAKER SMITH |
| ATTORNEY FOR APPELLEES: | WILLIAM F. RAY |
| NATURE OF THE CASE: | CIVIL - CONTRACT |
| DISPOSITION: | AFFIRMED - 03/09/2021 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**GREENLEE, J., FOR THE COURT:**

¶1. Vicki L. Currie, individually and as executrix of the estate of Charles Michael "Mike"

Currie, and Currie Family Holdings (hereinafter "Vicki") appeal from the Lee County Circuit

Court's order granting a motion to compel arbitration filed by Curtis Edward "Eddie"

McNeal, Carrie Beth Randall, McNeal & Randall, a private wealth advisory practice of Ameriprise Financial Services Inc., Ameriprise Financial Services Inc., and RiverSource Life Insurance Company (collectively referred to as "the Defendants"). The motion was based on an arbitration clause contained in the insurance contract between the Curries and the Defendants. Finding that the circuit court did not err in granting the motion to compel arbitration, we affirm the court's judgment.

### FACTS AND PROCEDURAL HISTORY

¶2.     In late January or early February 2014, Mike and Vicki Currie contacted Eddie McNeal, an insurance salesman for RiverSource Insurance Company (a subsidiary of Ameriprise Financial), inquiring into his service as a financial advisor. Based on this communication, McNeal met with the Curries to discuss financial planning.

¶3.     In July 2014, McNeal received confirmation from the Curries that they intended to employ his financial planning services. On July 22, 2014, McNeal sent an engagement letter memorializing their prior communication and explaining the steps he would take to assess their financial-planning needs. On October 28, 2014, McNeal met with the Curries at Mike's office and informed them of the results of the assessment. Finding McNeal's proposal acceptable, the Curries executed the Ameriprise Financial Planning Service Agreement (AFPSA). Ameriprise, in the two page contract, agreed "to perform financial planning services based on the terms and conditions outlined in the Client Disclosure Brochure," which incorporated by reference the disputed arbitration agreement.

¶4.     Prior to engaging McNeal as their financial advisor, the Curries had three life

2

insurance policies collectively with Massachusetts Mutual and American United Life, totaling six million dollars. Based on McNeal's assessment, he suggested the Curries replace their existing life insurance policies with policies issued by RiverSource. The Curries complied with McNeal's recommendation.

¶5.     Shortly after signing the AFPSA, Mike committed suicide. Under their new RiverSource policy, if an insured committed suicide within two years of the policy being issued, the beneficiary would be excluded from collecting proceeds under the life insurance policy. Vicki Currie[1] would have been covered and received payment had she and Mike not switched their policy from Massachusetts Mutual and American United Life to Ameriprise/RiverSource because their original policies had been issued more than two years before Mike's death.

¶6.     Based on the nonpayment of their Ameriprise/RiverSource insurance policy, Vicki Currie claimed that the advice given by McNeal and the actions that followed constituted a breach of McNeal's fiduciary duty. Rather than initiating an arbitration proceeding as provided in the agreement, Vicki Currie filed suit in the Lee County Circuit Court against the following defendants: McNeal; McNeal's daughter and business partner, Carrie Beth Randall; McNeal & Randall; Ameriprise Financial Services Inc.; and RiverSource Life Insurance Company. The complaint alleged several claims, particularly, negligence, breach of fiduciary duty, and breach of contract. According to Vicki Currie, McNeal failed to inform the Curries prior to the canceling of their original policies that he would receive a $68,000

---

[1] When speaking of Vicki as an individual, we address her as Vicki Currie.

commission. On December 10, 2015, the Defendants filed a motion to compel arbitration and requested the circuit court to stay the proceedings pending arbitration.

¶7.     The circuit court granted the motion to compel arbitration, holding (1) a valid arbitration agreement existed, (2) all claims fell within the scope of that agreement, and (3) no legal constraints existed to invalidate the arbitration agreement. Vicki appeals and argues that the circuit court erred by enforcing the arbitration agreement set forth in the AFPSA.

## STANDARD OF REVIEW

¶8.     "In reviewing an appeal of an order compelling arbitration, we review the [circuit court's] factual findings under an abuse-of-discretion standard, and we conduct a de novo review of all legal conclusions." *Virgil v. Sw. Miss. Elec. Power Ass'n*, 296 So. 3d 53, 59 (¶11) (Miss. 2020). Our "sole function is to determine whether the claim is referable to arbitration." *Terminix Int'l Inc. v. Rice*, 904 So. 2d 1051, 1054-55 (¶7) (Miss. 2004). The merits of the dispute itself will not be considered or weighed. *IP Timberlands Operating Co. v. Denmiss Corp.*, 726 So. 2d 96, 108 (¶48) (Miss. 1998). The burden of proving a defense to arbitration is placed on the party resisting arbitration. *Virgil*, 296 So. 3d at 59 (¶12) (citing *Nw. Fin. Miss. Inc. v. McDonald*, 905 So. 2d 1187, 1193 (¶11) (Miss. 2005)).

## DISCUSSION

¶9.     Congress, by means of the Federal Arbitration Act (FAA), established a national policy favoring arbitration. *Smith v. Express Check Advance of Miss. LLC*, 153 So. 3d 601, 606 (¶9) (Miss. 2014). "Arbitration agreements 'shall be valid, irrevocable, and enforceable save upon such grounds as exist at law or in equity for the revocation of any contract.'" *Id*.

(quoting 9 U.S.C. § 2). Therefore, if the parties validly agreed to arbitrate the dispute at issue, the courts must compel arbitration. *Id.* at (¶10).

¶10. Courts generally implement a two-prong analysis to determine whether parties agreed to arbitrate their disputes. *Id.* at (¶10). The first prong consists of two considerations: "(1) whether there is a valid arbitration agreement and (2) whether the parties' dispute is within the scope of the arbitration agreement." *Virgil*, 296 So. 3d at 59 (¶13) (quoting *E. Ford Inc. v. Taylor*, 826 So. 2d 709, 713 (¶9) (Miss. 2002)). Under the second prong, discussed in Part III below, the court asks "whether legal constraints external to the parties' agreement foreclosed arbitration of those claims." *Id.* In other words, an arbitration agreement may be invalidated by state contract defenses as they would any other contractual provision. *Covenant Health & Rehab. LP v. Estate of Moulds*, 14 So. 3d 695, 699 (¶9) (Miss. 2009). Here, Vicki disputes the existence of an arbitration agreement.

### I. Whether the circuit court erred by finding that the parties entered into a valid arbitration agreement.

¶11. The Curries and McNeal entered into an AFPSA, which incorporated by reference the Ameriprise Client Disclosure Brochure. The AFPSA stated:

> Ameriprise Financial Services, Inc. (the "Company") agrees to perform financial planning services based on the terms and conditions outlined in the Client Disclosure Brochure (the "brochure").

¶12. Directly above the signature line, a provision of the AFPSA reads, "Part 4 Client Acknowledgment, Arbitration Provision and Signature Information." This provision states in relevant part:

> By signing below, you acknowledge you have read this Agreement and

5

received and read the brochure. You agree to the terms and conditions in the brochure that are fully incorporated by reference into this Agreement ("terms and conditions").

Part 4 of the AFPSA requires "that all claims arising out of this Agreement shall be settled solely by arbitration, as more particularly described in the brochure." In reviewing the brochure, page thirty-nine contained the "Terms and Conditions of [the] AFPS Agreement" and page forty-one, Part 4, is bolded and labeled "About Arbitration."

¶13. Our supreme court, in *Woodruff v. Thames*, 143 So. 3d 546, 554-55 (¶20) (Miss. 2014), addressed contracts that reference or incorporate other documents:

> For an incorporation by reference to be effective, it must be clear that the parties to the agreement had knowledge of and assented to the incorporated terms. A reference to another document must be clear and unequivocal, and the terms of the incorporated document must be known or easily available to the parties. A document is considered incorporated by reference where the incorporating document specifically provides that it is subject to the incorporated one. However, a mere reference to another document is not sufficient to incorporate that other document into a contract; the writing to which reference is made must be descried in such terms that its identity may be ascertained beyond reasonable doubt.

*Id*. (quoting 17A C.J.S. Contracts § 402 (2011)). The AFPSA specified that the parties would be governed by the terms and conditions found in the brochure. By signing the AFPSA, the Curries affirmed that they had reviewed and agreed to all of the terms and conditions of the Agreement including those incorporated by reference. *See Terminix Int'l Inc. v. Rice*, 904 So. 2d 1051, 1056 (¶18) (Miss. 2004) (holding that under Mississippi law, there is a presumption that a party has read the document he signed and, therefore, is aware of the provisions it contains).

¶14. It is apparent that the AFPSA gave the Curries notice that the brochure must be read

6

because it contained the exact terms and conditions of the parties' agreement, including the terms requiring arbitration of disputes. The arbitration agreement found in the brochure, referenced by and incorporated in the AFPSA, is valid against Vicki Currie.

> **II. Whether the circuit court erred by finding that this dispute fell within the scope of the arbitration provision.**

¶15. Vicki Currie claims that McNeal owed her and Mike a fiduciary duty. This claim arose from McNeal's alleged breach of his fiduciary duty based on his role as the Curries' financial advisor. Vicki Currie specifically argues that since McNeal had a fiduciary duty, it was his duty to explain the arbitration agreement to her and Mike. Therefore, Vicki Currie claims all "duty to read" cases are inapplicable and that McNeal's failure constituted fraud, invalidating any arbitration agreement.

¶16. "Courts often characterize arbitration language as either broad or narrow." *MS Credit Ctr. Inc. v. Horton*, 926 So. 2d 167, 175 (¶24) (Miss. 2006). "Broad arbitration language governs disputes 'related to' or 'connected with' a contract, and narrow arbitration language requires arbitration of disputes that directly 'arise out of' a contract." *Id*. at 176 (¶24) (quoting *Pennzoil Exploration & Prod. Co. v. Ramco Energy Ltd.*, 139 F.3d 1061, 1067 (5th Cir. 1998)). "Because broad arbitration language is capable of expansive reach, courts have held that 'it is only necessary that the dispute "touch" matters covered by [the contract] to be arbitrable.'" *Id*. at (¶25) (quoting *Pennzoil*, 139 F.3d at 1068). The language in Part 4 of the incorporated brochure reads:

> Any controversy or claim arising out of or related to this contract or breach thereof shall be settled solely by arbitration in accordance with the Rules of the American Arbitration Association, and judgment upon the award rendered by

7

the arbitrator(s) may be entered in any court having jurisdiction thereof. Unless otherwise agreed to by all the parties to the arbitration (including without limitation Ameriprise Financial Services and you), the American Arbitration Association shall be the sole venue for resolving claims arising out of or relating to the Agreement, and all the parties to the arbitration (including without limitation Ameriprise Financial Services and you) irrevocably waive trial by jury in any action, proceeding or counterclaim, whether at law or in equity . . . .

¶17. The terms "arising out of" and "related to" as used in the above arbitration agreement are classified as broad provisions. *Pennzoil*, 139 F.3d at 1067. Each of Vicki's claims against the Defendants either arise out of or relate to the actions or conduct of McNeal. The arbitration provision in Part 4 requires that all claims arising out of or relating to "this contract or breach thereof" are subject to arbitration. Vicki's claims are the exact type of dispute anticipated by the Agreement. Accordingly, the circuit court did not err by finding that Vicki's dispute fell within the scope of the arbitration provision.

### III. Whether the circuit court erred by finding that no external factors precluded arbitration.

¶18. Vicki claims even if an agreement to arbitrate exists, the agreement is unenforceable based on the doctrine of fraud.

¶19. The second prong of the test is "whether legal constraints external to the parties' agreement foreclosed arbitration of those claims." *Blakeney*, 950 So. 2d at 173 (¶12) (citing *Taylor*, 826 So. 2d at 713 (¶10)). "[S]tate contract defenses may invalidate the agreement to arbitrate as they would any other contractual provision." *Smith*, 153 So. 3d at 606 (¶11). Specifically, under state contract law, an arbitration agreement may be invalidated, without offending federal arbitration laws, if applicable contract defenses such as fraud, duress, and

8

unconscionability are available. *Taylor*, 826 So. 2d at 713 (¶10) (citing *Dr.'s Assocs. Inc. v. Casarotto*, 517 U.S. 681, 686 (1996)). However, the burden of proving that a contract defense is applicable rests with the party resisting arbitration. *McDonald*, 905 So. 2d at 1193 (¶11).

¶20.    Our supreme court has made it clear that "when . . . consider[ing] whether legal constraints exist external to the agreement, which might invalidate the arbitration provisions, the existence of fraud in the formation of the contract may be considered." *Rogers-Dabbs Chevrolet-Hummer Inc. v. Blakeney*, 950 So. 2d 170, 177 (¶17) (Miss. 2007) (quoting *Cleveland v. Mann*, 942 So. 2d 108, 112 (¶9) (Miss. 2006)).

¶21.    Vicki Currie submitted an affidavit claiming that McNeal never expressed the need to read any of the documents that she and her husband signed, nor did he provide any explanation regarding any of the documents. However, a self-serving affidavit does not equate to the type of evidence required to call the "making of the arbitration agreement" into question. *Bhatia v. Johnston*, 818 F.2d 418, 421-22 (5th Cir. 1987). Additionally, Vicki Currie neither alleged fraud in the complaint with the specificity our law requires nor has she brought to the court's attention any false representation made by the Defendants.

¶22.    Furthermore, under Mississippi law, "a contracting party is under a legal obligation to read a contract before signing it." *McKenzie Check Advance v. Hardy*, 866 So. 2d 446, 455 (¶30) (Miss. 2004). Under this legal obligation, if the Curries had read the AFPSA, they would have read all the terms and conditions of their agreement, including the bolded arbitration agreement. "[A] person is charged with knowing the contents of any document

9

that he executes." *Terminix*, 904 So. 2d at 1056 (¶18). Therefore, Vicki Currie cannot circumvent a written contract they made based on the argument that they did not read it. *Id*.

¶23. The AFPSA's arbitration provision was not hidden or concealed. The reference to the arbitration agreement was clearly located above the Curries' signatures, and the heading of the arbitration agreement itself was bolded.

¶24. For the above reasons, the circuit court did not err by finding that no external factors precluded arbitration.

**CONCLUSION**

¶25. We find that the circuit court did not err by compelling the Curries to arbitrate their claims against the Defendants. A valid arbitration agreement existed, the disputes fell within the scope of that agreement, and no legal constraints were present that would prohibit arbitration. Therefore, we affirm.

¶26. **AFFIRMED.**

**CARLTON, P.J., WESTBROOKS, LAWRENCE AND SMITH, JJ., CONCUR. McCARTY, J., CONCURS IN PART AND IN THE RESULT WITHOUT SEPARATE WRITTEN OPINION. WILSON, P.J., CONCURS IN RESULT ONLY WITHOUT SEPARATE WRITTEN OPINION. McDONALD, J., CONCURS IN PART AND DISSENTS IN PART WITHOUT SEPARATE WRITTEN OPINION. BARNES, C.J., AND EMFINGER, J., NOT PARTICIPATING.**